MICHIGAN CENTRAL PARK ASSOCIATION *v.*
ROSCOMMON COUNTY ROAD COMMISSION.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—RECORD.
   A chancery case is heard by the Court of Appeals *de novo* on
   the record.

2. SAME—CHANCERY CASES—FINDINGS OF FACT.
   Great weight is given by the Court of Appeals to the findings
   of fact by the trial judge in a chancery case, and reversal is
   not made unless convinced from a reading of the entire record
   that the Court of Appeals would have reached a different
   conclusion.

3. HIGHWAYS AND STREETS—DEDICATION—LAKE SHORE BOULEVARD—
   RIPARIAN RIGHTS OF ABUTTING OWNERS.
   Finding of fact in class action by voluntary association of owners
   of lots abutting a boulevard, dedicated to public use, along
   an inland lake shore, whereby an injunction was sought re-
   straining public authorities from turning the boulevard into
   a public beach, that each plaintiff abutting lot owner had
   riparian rights to the shore and lake opposite his lot except
   where there was privately owned land between his property
   and the beach is affirmed under record presented.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CLASS ACTION—SUB-
   DIVISION LOT OWNERS.
   Adjudication of separate rights, if any, of owners of lots of the
   subdivision not abutting lake shore boulevard, other than as
   they are members of the general public, is not made on appeal
   in class action by plaintiff, a voluntary association of owners

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 703, 967.
[2, 3] 5 Am Jur 2d, Appeal and Error § 822.
[4] 4 Am Jur 2d, Appeal and Error § 291; 6 Am Jur 2d, Associations
    and Clubs § 55.
[5] 30A Am Jur, Judgments § 909 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error § 1009.

of lots abutting the boulevard to enjoin defendant board of county road commissioners and township board from converting lakeside area in front of plaintiffs' lots into a public bathing beach.

5. HIGHWAYS AND STREETS — LAKE SHORE BOULEVARD — RIPARIAN RIGHTS — POLICING.

Part of judgment of trial court ordering township board to assume the policing of a boulevard along an inland lake shore dedicated to public use, wherein plaintiffs have riparian rights is ordered vacated, where there is no record showing of legislative authority for enforcement of such an order.

6. COSTS — PUBLIC QUESTION — INLAND LAKE — SHORE BOULEVARD — PUBLIC BEACH.

No costs are allowed in class action by owners of lots abutting a boulevard along a shore of an inland lake to restrain defendant public authorities from converting the premises into a public beach, a public question being involved.

Appeal from Roscommon; O'Keefe (Dennis J.), J. Submitted Division 3 October 5, 1965, at Lansing. (Docket No. 70.)  Decided January 25, 1966.

Bill for injunction by Michigan Central Park Association of Higgins Lake, a voluntary association, against Roscommon County Road Commission, a statutory corporation, and others to enjoin the conversion of a public road into a public beach. Injunction granted. Defendants appeal. Modified and affirmed.

*Fortino, Plaxton & Deatrick (Albert J. Fortino,* of counsel), for plaintiff.

*Charles H. Miltner,* for defendants.

WATTS, J.  The seeds for the action here being appealed were sown back at the turn of the century when the land involved, lying along Higgins lake, was platted. At that time, the plattor laid out lots

and streets in the Michigan Central Park subdivisions and along the shore of the lake showed an irregular strip of shoreline as "Michigan Central Park Boulevard". The plats designated that all streets and alleys in the subdivisions concerned were dedicated to public use.

Down through the years, until the 1950's, there was no development made by the Roscommon county road commission of Michigan Central Park Boulevard. In some places, the area was wooded down to the lake. In 1953, the defendant Roscommon county road commission came in and cleared land on Michigan Central Park boulevard between Oak and Elm streets, two streets which ran to the lake. This was not graded or graveled, but apparently there was some vehicular traffic. There is evidence in the record that protest was made at that time of the traffic. There is also evidence in the record that other parts of Michigan Central Park boulevard, in the same subdivision, have been developed by the abutting owners as lawns down to the water's edge. Furthermore, in the area between Oak and Elm streets, and within the boulevard as surveyed and platted, there have been cottages built. This has also occurred in other areas.

Referring to the 1953 clearing by the road commission, the testimony shows that the public generally started coming down into the area after the clearing.

In 1957, a chancery action was started which preceded and ties in with this case. In it, the plaintiffs sought a temporary and permanent injunction against defendant Roscommon county road commission on the theory that the dedication of the boulevard to public use had been abandoned.

In July, 1958, a decree was filed by the Roscommon county circuit court which dismissed the bill of com-

plaint. Appeal was made but not perfected; and on December 31, 1959, parties stipulated that the unperfected appeal be dismissed.

During the course of this first case, sometime between 1957 and 1959, the Roscommon county road commission graded and graveled the roadway between Oak and Elm streets. It should be understood that this was a roadway under 30 feet wide, running for one block through Michigan Central Park boulevard, and that the boulevard as platted varies in width from under 50 feet to 200 feet.

The court in the first case found that Michigan Central Park boulevard was a public street under the jurisdiction and control of the Roscommon county board of county road commissioners.

In August, 1960, the present action was begun in chancery. In it, the plaintiff, Michigan Central Park Association of Higgins lake, a voluntary association, sought a temporary injunction restraining the defendants from turning the boulevard into a public beach; sought to have the lower court hear the case and enter an order and decree permanently enjoining defendants from so doing; and directing it to maintain the roadway and post signs indicating that the roadway was not a public beach.

The plaintiff association, composed of members from two of the Michigan Central Park subdivisions who owned lots abutting the boulevard, brought the action as a class action for all other abutting owners.

The plaintiff's theory was basically that if Michigan Central Park boulevard were a roadway, as claimed by the defendants and as found in the first case, it should be maintained as a roadway and not as a public beach; to maintain it as a public beach is contrary to the use of a public road and, furthermore, deprives them of a property interest, namely, riparian rights, without due process.

Defendants argue that since the property is platted to public use and dedicated to public use, the riparian rights are shared by the abutting owners with other lot owners in the same plat and the general public.

The basic issue then is whether or not members of plaintiff association have riparian rights in Higgins lake as owners of lots abutting Michigan Central Park boulevard.

We do not think it would serve any purpose to go into an extensive exposition of the involved arguments and various authority set forth by counsel in their excellent briefs. This Court has thoroughly and repeatedly reviewed the entire record in the case.

The lower court found that Michigan Central Park boulevard, running parallel with Higgins lake, was a public highway as contemplated by the McNitt act,* as amended, CLS 1961, § 247.669 (Stat Ann 1958 Rev § 9.1097[19]) and that the public authorities had assumed jurisdiction thereof as a county road.

That court further found that the plaintiff Michigan Central Park Association of Higgins lake and all other abutting property owners have riparian rights along the shore of Higgins lake, each lot owner having riparian rights in the shore and lake opposite his lot. This finding of the court below is squarely supported by *Croucher* v. *Wooster* (1935), 271 Mich 337, and the New York case of *Johnson* v. *Grenell* (1907), 188 NY 407 (81 NE 161, 13 LRA [NS] 551) cited therein. (In both of those cases, the lots involved were part of a plat: the road in the Michigan case had been established by user, while that in the New York case had been dedicated by the

---

* The McNitt-Holbeck-Smith act (CL 1948, § 247.1–247.13 [Stat Ann §§ 9.141–9.153]), was repealed and replaced by PA 1951, No 51 (CLS 1961, §§ 247.651–247.673 [Stat Ann 1958 Rev §§ 9.1097(1)–9.1097(23)]).—REPORTER.

plat.) The only exception to the above general proposition found by the lower court is where there is land in private ownership lying between Michigan Central Park boulevard and the lake, riparian rights belong to the owners of such lands and not to the owners of lands on the opposite side of the boulevard.

This was a chancery proceeding, having been begun in 1960. On appeal, it was transferred to this Court by the Supreme Court. A chancery appeal or, since the change of rules in 1963, an appeal which formerly would have been in chancery is heard *de novo* on the record. However, in such cases, great weight is given by this Court to the findings of fact of the trial judge. We do not reverse in such cases unless we find from a reading of the entire record we would have reached a different conclusion. *Kren* v. *Rubin* (1953), 338 Mich 288; *Resh* v. *Fox* (1961), 365 Mich 288; *Stacey* v. *Mikolowski* (1962), 367 Mich 550; *Haas* v. *Klapatch* (1963), 370 Mich 499. We have thoroughly reviewed the entire record, and we will not reverse the fact findings of the lower court in this case.

The separate rights, if any, of owners of lots of the subdivisions not abutting Michigan Central Park boulevard are not adjudicated in this case, except as they are members of the general public.

This Court vacates that part of the judgment of the lower court which orders the Lyon township board to assume the policing of Michigan Central Park boulevard since there is no showing in the record of legislative authority for enforcing such an order.

The Court affirms the remainder of the judgment. No costs, a public issue being involved.

QUINN, P. J., and McGREGOR, J., concurred.