McCARDEL v SMOLEN

1. WATERS AND WATER COURSES—RIPARIAN RIGHTS—BOULEVARD
   FRONTAGE—INLAND LAKES.

   The riparian rights to boulevard frontage on an inland lake are
   owned by lot owners whose lots adjoin the landward side of the
   boulevard frontage where no private property lies between
   their lots and the lake.

2. WATERS AND WATER COURSES—RIPARIAN RIGHTS.

   Riparian rights are only a small piece of the collection of rights
   which constitute the outright ownership of land; such rights
   generally involve direct use of the water or uses of the land
   which facilitate use of the water.

3. WATERS AND WATER COURSES—RIPARIAN RIGHTS—BOULEVARD
   FRONTAGE—LOUNGING AND PICNICKING—DOCKS AND BOAT
   HOISTS.

   The owner of the riparian rights to boulevard frontage on an
   inland lake, who does not own the boulevard land itself to
   which those rights would normally attach, has no special right
   to control lounging and picnicking on the boulevard; neverthe-
   less, such owner does have the exclusive right to erect and
   maintain docks and boat hoists along the shore.

4. NAVIGABLE WATERS—WATERS AND WATER COURSES—RIPARIAN
   RIGHTS—PUBLIC NAVIGATION RIGHTS.

   The riparian owner of the shore of a navigable inland lake owns
   the bottom of the lake to the center; but that title is subordi-
   nate to the public's navigation rights if the public has lawful
   means of access to the lake.

5. NAVIGABLE WATERS—WATERS AND WATER COURSES—NAVIGATIONAL
   SERVITUDE.

   Recognized incidents of a navigational servitude include boating,
   fishing, wading and swimming.

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 6–8] 78 Am Jur 2d, Waters §§ 269, 270.
[5] 78 Am Jur 2d, Waters § 59 *et seq.*
[9] 78 Am Jur 2d, Waters §§ 93, 94.

6. Waters and Water Courses—Boulevards—Riparian Rights—Lounging and Picnicking.

Lounging and picnicking rights, on a strip of beach property, are separate and distinct from riparian rights.

7. Waters and Water Courses—Lounging and Picnicking—Public Uses—Riparian Rights.

Where lounging and picnicking are appropriate public uses of a boulevard frontage on an inland lake, both the general public and the owner of the riparian rights to such frontage may use the boulevard for lounging and picnicking.

8. Waters and Water Courses—Highways—Boulevards—Lake Frontage—Lounging and Picnicking.

Lounging and picnicking are appropriate uses of a strip of beach property, which was dedicated to the public as a boulevard and which fronts on an inland lake, where the boulevard is not open to vehicular traffic where there are indications that the boulevard designation was simply a device used to insure continued public access to the beach, and where such an interpretation is consistent with the definition of a boulevard at the time when the land was platted in 1901.

9. Waters and Water Courses—No-Access Rule—Highways—Highway Along Lake.

The no-access rule states that the public cannot step from a public street into a navigable body of water where the street immediately parallels the shore, even though no private property intervenes between the street and the water; however, where the public has other lawful means of access to the lake, the no-access rule has never been followed.

Appeal from Roscommon, Carl L. Horn, J. Submitted June 1, 1976, at Lansing. (Docket No. 22696.) Decided October 18, 1976. Leave to appeal applied for.

Complaint by Gary McCardel and others against Joseph Smolen and others for an injunction to prevent trespass upon riparian rights. Judgment for plaintiffs. Defendants appeal. Affirmed in part, reversed in part, and remanded for further proceedings.

*Fortino, Plaxton & Moskal,* for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *James W. Williams),* for defendants.

*Amicus Curiae: Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Russell E. Prins,* Assistants Attorney General.

Before: ALLEN, P. J., and D. E. HOLBROOK, Jr., and E. H. PAPP,* JJ.

ALLEN, P. J. This appeal brings to the Court for the fourth time a dispute over beach access rights in platted Higgins Lake subdivisions. All of the litigants own property in the "First Addition" to Michigan Central Park Subdivision.[1] Lots in the subdivision are separated from the waters of Higgins Lake by a strip of land designated on the plat as Michigan Central Park Boulevard. The boulevard was dedicated to the county, ostensibly as a public street. But the "boulevard" is actually nothing more than undeveloped beach property. We are asked to decide who owns the riparian rights in the boulevard frontage and to define those rights.

The plaintiffs all own "front lots", *i.e.,* lots in the first row of lots on the landward side of the disputed strip. The defendants own "back lots", *i.e.,* lots which are one or more rows removed from the beach. The trial judge ruled that the plaintiff front lot owners also owned the riparian rights incident to the boulevard property because no private property lies between their lots and the

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] *See* defendants' Exhibit 2, attached to this opinion.

lake. The judge rejected the defendants' theory that the riparian rights belong to the public because the boulevard is owned by the county.[2] The lower court's injunctive order barred the defendants from:

" * * * trespassing upon the riparian rights of the Plaintiffs and, more specifically, from lounging, picnicking, bathing, swimming, launching boats, erecting or maintaining docks and boat hoists, anchoring boats or similar activities, in front of the premises owned by the Plaintiffs * * * ."

The injunctive order was directed only against defendants and others acting in concert with them. But the rejection of their defense based on rights held as members of the general public has led the Attorney General to intervene on appeal as an amicus curiae in order to protect what he describes as the public's "right of navigation upon or over the waters of Higgins Lake and the lands lying beneath such waters".[3]

The plaintiffs have long treated the disputed strip as an extension of their own lots, thereby creating the false impression that their property descriptions included the frontage. At the same time, the defendants have always used the property as a beach and, like the plaintiffs, have in-

---

[2] The defendants' answer also sought recognition of an implied dedication to the public or a prescriptive easement held by the individual defendants. However, only the riparian rights question has been raised on appeal.

[3] The record before us does not include a finding that Higgins Lake is navigable. The lake is very large and is almost certainly navigable whether the recreation use test proposed by the Attorney General or one of the more traditional tests still preferred by our Supreme Court is used. Contrast *Attorney General v Hallden,* 51 Mich App 176; 214 NW2d 856 (1974), with the three opinions in *Pigorsh v Fahner,* 386 Mich 508; 194 NW2d 343 (1972). Some of the discussion which follows will assume navigability; but we must emphasize that the question has not been litigated in this case.

stalled docks and boat hoists along the shore. The parties and their predecessors coexisted peacefully until a personal quarrel led to the present lawsuit.

### Who owns the riparian rights?

The plaintiff front lot owners also own the riparian rights in the boulevard frontage. That issue was resolved in their favor by three previous decisions of this Court, all of which involved Higgins Lake property. *Michigan Central Park Association*[4] *v Roscommon County Road Commission,* 2 Mich App 192; 139 NW2d 333 (1966), *Sheridan Drive Association v Woodlawn Backproperty Owners Association,* 29 Mich App 64; 185 NW2d 107 (1970), and *Kempf v Ellixson,* 69 Mich App 339; 244 NW2d 476 (1976). Each of those cases relied on *Croucher v Wooster,* 271 Mich 337; 260 NW 739 (1935). The cited cases support the trial judge's ruling that only the plaintiffs have riparian rights in the boulevard frontage.

The defendants ask us to distinguish *Croucher* because the government in that case had only a highway easement, whereas Roscommon County is said to have a fee simple title to the boulevard property involved in this case under the terms of the plat act in effect when the subdivision plat was recorded.[5] 1887 PA 309. Actually, that statute provided that the government would take a fee "in trust to and for the uses and purposes therein [the plat] designated, and for no other use or purpose whatever". Even if a distinction is possible we will not adopt it. There are problems with the

---

[4] There is a series of Michigan Central Park Subdivisions. The one involved in the present case is the "First Addition". Another in the series of subdivisions was the subject of the case reported in 2 Michigan Appeals Reports.

[5] The other Higgins Lake cases are said to be distinguishable because this Court did not discuss the title issue.

*Croucher* rule, but an exception vesting the riparian rights in the public would create problems of its own—including the need to precisely define the underlying title in every case. *Croucher* at least offers uniformity, a more attractive feature than any offered by the defendants' proposed distinction.

### Consequences of riparian ownership

In the preceding section, we rejected the defendants' proposed title-based distinction in favor of a uniform rule for determining ownership of the riparian rights. But we are favorably impressed by their related argument that the earlier opinions have failed to explore the consequences of a finding that one party or the other owns the riparian rights. Ownership of those rights has usually been equated with outright ownership of the lake frontage; witness the injunctive order in the present case which effectively gives the plaintiffs full control over land which even they concede is public property. That equation oversimplifies the problem. Riparian rights are only a small piece of the collection of rights which constitute outright ownership of land. They generally involve direct use of the water or uses of the land which facilitate use of the water. 7 Clark, Waters & Water Rights, Glossary, pp 309–310; National Water Commission, A Summary-Digest of State Water Laws, Michigan, § 3.2, pp 401–403. The present case is unusual because the owner of the riparian rights does not own the land to which those rights would normally attach. Blurring the distinction between riparian rights and other ownership rights ordinarily will not affect the outcome of a dispute because the same person owns both. But here the plaintiffs own the riparian rights and nothing

more. The trial court's injunctive order must be examined with that limitation in mind.

The trial judge ruled that the plaintiffs' riparian rights included the right to effectively bar the defendants from the boulevard and the water in front of the boulevard. On appeal, the defendants and the Attorney General have launched a two-pronged attack designed to reduce the scope of the injunctive order. To paraphrase Paul Revere, one comes by land, the other by sea.

Assuming that Higgins Lake is navigable,[6] the Attorney General argues that the trial judge's injunction improperly restricted the public's navigation rights. The riparian owner of the shore of a navigable inland lake owns the bottom of the lake to the center. *Hall v Wantz,* 336 Mich 112; 57 NW2d 462 (1953). But that title is subordinate to the public's navigation rights if the public has lawful means of access to the lake. *Collins v Gerhardt,* 237 Mich 38; 211 NW 115 (1926). Recognized incidents of the navigational servitude include boating, fishing, wading and swimming. *Collins v Gerhardt, supra,* 23 Michigan Law & Practice, Waters & Water Courses, § 53, p 315. Assuming lawful access, that portion of the lower court's order which prohibited the defendants from "bathing, swimming, * * * [temporarily] anchoring boats or similar activities" must be vacated.

---

[6] *See* footnote 3, *supra,* for the basis of the assumption. We also note that state and local governments are riparian owners of other shoreline property which has been developed into parks and public access points. Even on non-navigable lakes, all riparian owners have equal rights to reasonable use of the entire lake. *Beach v Hayner,* 207 Mich 93; 173 NW 487 (1919), *Opal Lake Assn v Michaywe,* 47 Mich App 354; 209 NW2d 478 (1973). If Higgins Lake were found to be nonnavigable, the courts would then be forced to decide if individual members of the public have riparian rights where the government is a riparian owner. Since there are developed parks on Higgins Lake, the present case should probably be distinguished from *Winans v Willetts,* 197 Mich 512; 163 NW 993 (1917), where the *only* public access to the lake was from the highway along the shore.

For their part, the defendants argue that "lounging rights" and "picnicking rights" are separate and distinct from riparian rights. We agree. Those activities are in no way directly related to a true riparian use of the waters of Higgins Lake; even assuming that the defendants choose to lounge and picnic on the boulevard because of the lake's proximity. In that context, the only "use" of the water is the enjoyment of its scenic presence. The plaintiffs have no exclusive claim to that activity.

We hold that the plaintiff front lot owners have no special right to control lounging and picnicking on the boulevard. Like the defendant back lot owners, they use the boulevard itself as members of the public. If lounging and picnicking are appropriate public uses of the boulevard, both plaintiffs and defendants may do so. If the public at large may not lounge and picnic, both plaintiffs and defendants are barred from doing so.

We believe that the public should be able to use the boulevard for "lounging and picnicking". Michigan Central Park Boulevard was dedicated and accepted as a public thoroughfare. And it will remain one until it is formally abandoned or the plat is vacated. *Michigan Central Park Association v Roscommon County Road Commission, supra.* The government's title is limited by the plat act restriction that the land be used "to and for the uses and purposes therein designated * * * ". 1887 PA 309, *supra.* Thus the public may use the beach only for "boulevard" purposes. The ultimate question is whether lounging and picnicking are appropriate uses of this boulevard.

It is difficult to believe that any proprietor would plat a lake resort subdivision in a manner which would deny lake access to three-fourths of

his intended purchasers. Nor can we readily accept the idea that the proprietor would destroy his development's most valuable asset by barring recreational use of the beach in order to create another street. And we have already rejected the suggestion that the proprietor—or rules of real property law—gave the plaintiffs a near equivalent to fee title to the boulevard. The only remaining possibility is that the boulevard designation was simply a device used to insure continued public access to the beach.

This conclusion is reinforced by the designation "boulevard" itself. Roadway classifications are not fungible—or at least they were not in 1901 when this subdivision plat was recorded. A street by any other name was *not* a street. Calling a street a boulevard could have important tax assessment consequences. *Miller v Detroit,* 244 Mich 38; 221 NW 292 (1928). A boulevard was said to be distinguished by "its width, its length, [and] provision for giving it a parklike appearance". *Oprisiu v Detroit,* 248 Mich 590, 592; 227 NW 714 (1929). Assessments for improvements to boulevards were chargeable to all of a city's citizens, not just to those whose property adjoined the boulevard. This was because true boulevards were viewed as parklike areas intended for enjoyment by the general public. *Miller v Detroit, supra.*

Black's Law Dictionary (4th ed), p 232, defined "boulevard" as:

"A street or highway with parklike appearance; or one specially designed for pleasure walking or driving * * * It is adapted and set apart for purposes of ornament, exercise and amusement."

Before the turn of the century, Detroit had a Parks and Boulevards Commission. 1879 PA 374,

1889 PA 388, *Scovel v Detroit,* 159 Mich 95; 123 NW 569 (1909). The present Detroit Municipal Code still contains ordinances governing conduct in "parks and boulevards". Municipal Code, Chapter 42, art 1. Among the activities mentioned are "picnicking" and "fishing or swimming". Those activities are limited to designated areas within "the parks, boulevards and public places". Detroit Municipal Code, §§ 42-1-16, 25.

The First Addition to Michigan Central Park Subdivision was platted in 1901. We believe that its namesake boulevard must have been designed for uses which would have been expected on a "boulevard" at that time. Since there was—and still is—little likelihood that it will ever be used by vehicular traffic, we hold that "lounging" and "picnicking" are appropriate public uses of the boulevard.[7]

As a consequence of their riparian rights, the plaintiffs do have some exclusive rights. Only the plaintiffs may "erect or maintain docks and boat hoists" along the shore. Those are recognized riparian rights which are not effectively duplicated by the public's right of navigation. *Hilt v Weber,* 252 Mich 198; 233 NW 159 (1930). That portion of the injunctive order was proper.

Obviously, our recognition of the public's rights will be meaningful only if they may continue to enter and leave Higgins Lake via the boulevard. As a practical matter, the access question is crucial.

A strong argument could be made for holding that the public cannot step from a public street

---

[7] We do not mean that "boulevard" is always equivalent to "park" merely because the plat is an old one. Also, if Roscommon County ever decided to open Michigan Central Park Boulevard to vehicular traffic, then public safety considerations will dictate a ban on "lounging" and "picnicking".

into a navigable body of water where the street immediately parallels the shore even though no private property intervenes between the street and the water. See *Meridian Twp v Palmer,* 279 Mich 586; 273 NW 277 (1937), *Winans v Willets, supra,* and contrast the majority and dissenting opinions in *Cass County Park Trustees v Wendt,* 361 Mich 247; 105 NW2d 138 (1960). But the practical absurdity of such a rule argues against its implementation. A review of the cases shows that the no-access rule has never been followed where the public had other lawful means of access to a lake. Thus, we conclude that the public may enter and leave Higgins Lake via the boulevard.

The preceding discussion dictates the following conclusions:

(1) Only the plaintiffs may construct docking facilities and permanent mooring devices in front of their lots.

(2) The defendants may engage in the other disputed activities provided that they do not unreasonably interfere with the plaintiffs' private and public rights.

We wish to emphasize that our decision in no way affects the more typical case of true riparian ownership where the shoreline is privately owned. The plaintiffs here are seeking to exercise dominion over valuable shoreline property without suffering the burden of actual ownership—most notably, property taxes.

If the plaintiffs wish to own the boulevard property, they could petition the circuit court to vacate the plat or ask the county to abandon its claim to the boulevard. If they are unwilling to pursue those remedies, a court of equity should not extend itself to give them exclusive use of public property at public expense.

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion. Costs to the defendants.