THIES v HOWLAND

Docket No. 73039. Argued June 6, 1985 (Calendar No. 26).—Decided
December 30, 1985. Released January 10, 1986.

Lee Thies and Kathleen Thies, owners of certain real property
located in a subdivision on the south shore of Gun Lake,
brought an action in the Barry Circuit Court against Jeffrey N.
Howland and Linda G. Howland and Curtis Vrieland and
Nancy Vrieland, other owners of real property within the
subdivision, seeking to enjoin the defendants from maintaining
a dock and anchoring their boats in the lake. The defendants
counterclaimed, seeking to enjoin the plaintiffs from interfering
with their use of an easement permitting access to the lake
created as a result of a consent judgment entered into by the
parties' predecessors in title across the west side of one of the
plaintiffs' lots. In the alternative, the defendants sought to be
permitted to use an alley originally platted between the plain-
tiffs' lots, but which had been encroached upon by the plain-
tiffs' predecessor in title and which was the subject of the suit
that resulted in the creation of the easement. The court,
Hudson E. Deming, J., sitting as the trier of fact, concluded
that the defendants could use the lake for boating, fishing,
sunbathing, and anchoring their boats as long as they did not
interfere with plaintiffs' reasonable use and enjoyment of their
property, but enjoined the defendants from erecting a dock.
The Court of Appeals, R. B. Burns, P.J., and MacKenzie and
Root, JJ., affirmed in part and reversed in part, in an unpub-

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Waters §§ 260-280.

Public rights of recreational boating, fishing, wading, or the like in
inland stream the bed of which is privately owned. 6 ALR4th
1030.

[2] Am Jur 2d, Waters §§ 269-273.

See the annotations in the ALR3d/4th Quick Index under Ease-
ments; Riparian Owners.

[3, 4] Am Jur 2d, Waters § 275.

Allocation of water space among lakefront owners, in absence of
agreement or specification. 14 ALR4th 1028.

Rights of servient owner to maintain, improve, or repair easement
of way at expense of dominant owner. 20 ALR3d 1026.

lished opinion per curiam, modifying the injunction to prevent the defendants from anchoring their boats off the terminus of the easement (Docket No. 53638). The defendants appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice WILLIAMS and Justices RYAN, BRICKLEY, BOYLE, and RILEY, the Supreme Court *held:*

The defendants are not riparian owners, but possess only an easement interest in a walk along the lakeshore and across one of the plaintiffs' lots. The plaintiffs own the fee in the land over which the easements run. Thus, the conclusions that the consent judgment did not grant the defendants the right to construct a dock or to permanently anchor boats off the terminus of the easement created as a result of the consent judgment were not error.

1. Land which includes or is bounded by a natural watercourse is riparian, and persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights, including the right to erect and maintain docks along and to anchor boats permanently off the owner's shore. Nonriparian owners and members of the public who gain access to a navigable body of water have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming, and, as an incident of the right of navigation, to anchor boats temporarily.

2. In this case, the defendants' lots do not touch the shore of the lake; thus, their land is not riparian. The exact boundaries of plaintiffs' property are not described in any documents relating to the past or present ownership of the land, but merely refer to lots of the recorded plat of the subdivision. The plat of the subdivision indicates a twelve-foot wide walk that runs immediately along the lakeshore. The plaintiffs' lots abut this walk. A second row of lots including the defendants' lies to the south of the first row, separated by a sixteen-foot wide driveway. Twelve-foot wide alleys are located after every fourth lot in the first and second rows, linking the driveways and the walk so as to provide all subdivision owners with access to the lake. The alleys and walk are dedicated to the joint use of all the owners of the plat.

3. Unless a contrary intention appears in a plat, owners of land abutting a right of way which is contiguous to water are presumed to own the fee in the entire way, subject to any easements. Because the owner's property is deemed to run to the water, it is riparian property. Thus, plaintiffs are presumed to own the fee in the walk running along the front of their lots unless the plattors intended otherwise. The trial court did not

err in finding that the walk was merely an easement and that plaintiffs owned the fee in that portion of the walk that ran in front of their lots. The phrase "joint use" in a dedication, standing alone, would not ordinarily denote the passing of a fee interest in land. In this case, no evidence was shown which would require a different conclusion. Nor did the term "joint use" in the dedication of the walk, standing alone, evidence an intent to permit all subdivision owners to construct docks along the walk.

4. A way which terminates at the edge of navigable waters is generally deemed to provide public access to the water. A city, on behalf of its citizens, is entitled to build wharves at the end of such streets to aid public access. The right to build a wharf or dock does not depend on whether the public owns the fee in the way. Rather, it is based upon the presumption that the plattor intended to give access to the water and permit the building of structures to aid in that access. Any dock which is constructed at the end of a common way must be made available for the use of those to whom the way is dedicated. The fact that only subdivision owners can use the alleys and docks would not require a different result. However, the defendants did not build their dock at the terminus of one of the dedicated alleys, but constructed their dock at the terminus of the easement created by the consent judgment. Use of the easement was narrowly defined and did not include within its scope the right to construct a dock or to permanently anchor boats. Defendants' use of plaintiffs' land is defined by the terms of the easement and must be confined to the purposes for which the easement was created. Use of an easement may not materially increase the burden upon the servient estate beyond that originally contemplated.

Affirmed.

Justice LEVIN, writing separately, stated that there is no adequate basis to conclude that the trial court, in stating that permanent anchorage of boats was within the scope of the dedication, was making a statement of law, rather than a finding of fact. It would seem that if the trial court stated findings of fact with respect to the other uses of the lake which were within the scope of the dedication, it was also stating a finding of fact when it spoke relative to the anchorage of boats. That finding being no less free of error than the others, it should be affirmed as well.

OPINION OF THE COURT

1. WATERS AND WATERCOURSES — WHARVES — PROPERTY — RIPARIAN
OWNERS — ANCHORAGE.

Land which includes or is bounded by a natural watercourse is
riparian, and persons who own an estate or have a possessory
interest in riparian land enjoy certain exclusive rights, includ-
ing the right to erect and maintain docks along and to anchor
boats permanently off the owner's shore; nonriparian owners
and members of the public who gain access to a navigable body
of water have a right to use the surface of the water in a
reasonable manner for such activities as boating, fishing, and
swimming, and, as an incident of the right of navigation, to
anchor boats temporarily.

2. WATERS AND WATERCOURSES — PROPERTY — RIPARIAN OWNERS —
EASEMENTS ALONG LAKESHORE.

Unless a contrary intention appears in a plat, owners of land
abutting a right of way which is contiguous to water are
presumed to own the fee in the entire way, subject to any
easements; because the owner's property is deemed to run to
the water, it is riparian property.

3. WATERS AND WATERCOURSES — WHARVES — PROPERTY — RIPARIAN
OWNERS — ANCHORAGE.

The phrase "joint use" in a plat dedication of a walk along a
lakeshore within a subdivision for the use of subdivision resi-
dents did not, standing alone, denote the passing of a fee
interest in the land or evidence an intent to permit all subdivi-
sion residents to construct docks along the walk; rather, the
walk was merely an easement over the lakeshore lots of the fee
owners.

4. WATERS AND WATERCOURSES — WHARVES — PROPERTY — RIPARIAN
OWNERS — PUBLIC ACCESS EASEMENTS.

Owners of nonriparian lots within a subdivision were not entitled
to construct docks at the terminus of an easement designed to
provide access to a lake where the easement was not a platted
way of access and the construction was without its scope and
would materially increase the burden upon the servient estate
beyond that originally contemplated.

*Brown & Winckler* (by *James L. Winckler*) for
the plaintiffs.

*Varnum, Riddering, Schmidt & Howlett* (by *Den-
nis C. Kolenda*) for the defendants.

CAVANAGH, J. The parties are owners of real property located in a subdivision on the south shore of Gun Lake in Barry County. The plat of the subdivision, originally recorded in 1907, indicates a twelve-foot-wide "walk" that runs immediately along the lakeshore. The first twenty lots in the subdivision abut this walk. A second row of twenty lots lies to the south of the first row. These rows are separated by a sixteen-foot wide "driveway." Another driveway separates the second row from a third row of forty-three smaller lots. Twelve-foot wide "alleys" are located after every fourth lot in the first and second rows. These alleys link the driveways and walk and were designed to provide all subdivision owners with access to the lake. A notation on the plat maps states "that the Driveways, Walks and Alleys shown on said plat are hereby dedicated to the joint use of all the owners of the plat."

In 1977, plaintiffs Lee and Kathleen Thies purchased lots 16 and 17 located in the first row. Defendants Jeffrey and Linda Howland purchased lot 25 and a portion of lot 24 in 1978. In the same year, defendants Curtis and Nancy Vrieland purchased lot 23 and portions of lots 22 and 24. Defendants' lots are located in the second row.

An alley was originally located between lots 16 and 17. However, a prior owner of these lots built a cottage which encroached upon the alley. In a 1975 consent judgment entered into by the parties' predecessors in title, an eight-foot wide easement was created across the west side of lot 16.

In 1978, plaintiffs constructed a seasonal dock extending from the shore into the lake to accommodate their boat. The dock was located in front of the western portion of plaintiffs' property. Defendant Howlands anchored their boat approxi-

mately 100 to 150 feet from the shoreline in front of the easement. In April 1979, the Howlands and Vrielands jointly constructed a fifty to sixty-foot seasonal dock at the end of the easement to accommodate their boats. The distance between plaintiffs' and defendants' docks was approximately twelve to sixteen feet.

In June 1979, plaintiffs filed suit, seeking to enjoin defendants from maintaining the dock and anchoring their boats in the lake. Defendants counterclaimed, requesting that plaintiffs be enjoined from interfering with defendants' use of the easement or, in the alternative, that defendants be permitted to use the alley between lots 16 and 17. Following a bench trial, the trial court concluded that defendants could use the lake for such recreational activities as boating, fishing and sunbathing, and could anchor their boats as long as they did not interfere with plaintiffs' reasonable use and enjoyment of their property. However, defendants were enjoined from erecting a dock. The Court of Appeals affirmed, but modified the injunction to prevent defendants from anchoring their boats off the terminus of the easement.[1]

We granted defendants' delayed application for leave to appeal and directed the parties to include among the issues to be briefed "whether the Court of Appeals erred in determining that the plat dedication did not convey to defendant landowners riparian rights which are exclusive to riparian owners." 419 Mich 934 (1984).

I

Land which includes or is bounded by a natural

---

[1] Unpublished opinion per curiam of the Court of Appeals decided September 15, 1983 (Docket No. 53638).

watercourse is defined as riparian.[2] Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. *Thompson v Enz,* 379 Mich 667, 677-679; 154 NW2d 473 (1967) (opinion of KAVANAGH, J.).[3] These include the right to erect and maintain docks[4] along the owner's shore, *Hilt v Weber,* 252 Mich 198, 226; 233 NW 159 (1930); Thompson, Real Property (1980 Replacement), §§ 274, 280, pp 453-454, 506-507; 3 American Law of Property, § 15.35, pp 874-875, and the right to anchor boats permanently off the owner's shore. *Hall v Wantz,* 336 Mich 112, 117; 57 NW2d 462 (1953). Nonriparian owners and members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. *Delaney v Pond,* 350 Mich 685, 688; 86 NW2d 816 (1957); *Hall,* 336 Mich 116-117.

Since defendants' lots do not touch the shore of Gun Lake, their land is not riparian. Defendants

---

[2] Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral. *McCardel v Smolen,* 404 Mich 89, 93, n 3; 273 NW2d 3 (1978). However, the term "riparian" is often used to describe both types of land and will be so used in this opinion.

The owner of land bounded by a natural inland watercourse also owns the bed of the lake or stream to the middle. *Hall v Wantz,* 336 Mich 112, 116; 57 NW2d 462 (1953); *Bauman v Barendregt,* 251 Mich 67, 70-71; 231 NW 70 (1930); *Richardson v Prentiss,* 48 Mich 88, 90-91; 11 NW 819 (1882).

[3] The exercise of riparian rights must be reasonable and cannot interfere with the rights of other riparian owners or the public. *Hall,* 336 Mich 116-117.

[4] The word "dock" is often used as a synonym for "wharf" and is so used in this opinion. However, the terms technically refer to distinctly different structures. A wharf is a structure erected on a shore to aid navigation and the loading and unloading of vessels. A dock is an artificial basin in connection with a harbor used for receiving vessels. 79 Am Jur 2d, Wharves, § 1, pp 173-174; 94 CJS, Wharves, § 1, pp 566-569.

argue, however, that the plat's dedication of the walk and alleys to "the joint use of all the owners of the plat" gave them title to these lands in common with the other subdivision owners. Since the walk and alleys in the first row are in contact with the water, defendants allege they and the other owners are riparian proprietors entitled to erect docks. Defendants believe that plaintiffs' lots are not riparian land because they merely abut the walk. Plaintiffs are riparian owners only because they are co-owners of the walk. Defendants conclude that plaintiffs cannot interfere with the reasonable exercise of their riparian rights.

Even if we conclude that defendants merely have an easement interest in the walk and alleys,[5] they may still prevail. Plaintiffs cannot prevent defendants from erecting a dock or permanently anchoring their boats if these activities are within the scope of the plat's dedication, *McCardel v Smolen,* 404 Mich 89, 97, 103; 273 NW2d 3 (1978), and do not unreasonably interfere with plaintiff's use and enjoyment of their property. The ownership of the walk and alleys and the scope of the dedication of these lands are interrelated, but distinct inquiries.

## II

### A

We first examine defendants' claim that they are riparian owners because they are tenants in common of the twelve-foot-wide lakeshore walk. The trial court concluded that plaintiffs' property

---

[5] An easement gives no title to the land on which it is imposed and is not an estate in land, although it is an interest in land. 25 Am Jur 2d, Easements & Licenses, § 2, pp 417-418. An easement along the water's edge does not cut off a riparian owner's rights. See *Croucher v Wooster,* 271 Mich 337; 260 NW 739 (1935); *Richardson,* 48 Mich 91.

was not separated from the water and that the walk was merely an easement. The Court of Appeals relied primarily upon *Croucher v Wooster,* 271 Mich 337; 260 NW 739 (1935), to reach the same conclusion. Defendants acknowledge that *Croucher* held that a lot separated from the water by a highway that is contiguous to the water is riparian land. However, defendants believe that *Croucher* should be applied only where the way has been dedicated to the public. Since the walk here is to be used only by the subdivision owners, defendants believe that the general rule requiring actual contact with the water applies and that plaintiffs' lots are not riparian land.

The cases which have applied *Croucher* only involved ways dedicated to public use.[6] Nevertheless, we believe that *Croucher* is equally applicable to ways dedicated to the private use of a finite number of persons. The relevant inquiry is not who may use the way, but whether the abutting landowner owns the fee in the way which separates his property from the water:

> While there is some authority to the contrary, the majority of the courts have followed the rule that land which is separated from water by a highway or street the fee of which is in the public is not riparian land; but where the fee in the land covered by the highway or street is in the owner of the land, riparian rights remain in such owner. [78 Am Jur 2d, Waters, § 273, p 716.]

See also 79 Am Jur 2d, Wharves, § 5, p 179; 1

---

[6] *Cass Co Park Trustees v Wendt,* 361 Mich 247; 105 NW2d 138 (1960) (concurring opinion of BLACK, J.); *Williamson v Crawford,* 108 Mich App 460; 310 NW2d 419 (1981); *McCardel v Smolen,* 71 Mich App 560; 250 NW2d 496 (1976), *rev'd in part* 404 Mich 89; 273 NW2d 3 (1978); *Kempf v Ellixson,* 69 Mich App 339; 244 NW2d 476 (1976); *Sheridan Drive Ass'n v Woodlawn Backproperty Owners Ass'n,* 29 Mich App 64; 185 NW2d 107 (1970); *Michigan Central Park Ass'n v Roscommon Co Rd Comm,* 2 Mich App 192; 139 NW2d 333 (1966).

Farnham, Water & Water Rights, § 144, pp 666-667; Plager & Maloney, *Multiple interests in riparian land, subdivision platting, and the allocation of riparian rights,* 46 U Det J Urb L 41, 50 (1968).

The exact boundaries of plaintiffs' property are not described in any documents relating to the past or present ownership of the land. These documents merely refer to lots 16 and 17 of the recorded plat. When a conveyance refers to a plat which represents lots as bounded by a street and describes the lots by numbers, the reference is equivalent to express language in the deed giving the street as a boundary. *Loud v Brooks,* 241 Mich 452, 454; 217 NW 34 (1928). Unless a contrary intent appears, owners of land abutting a street are presumed to own the fee in the street to the center, subject to the easement. *Id.; Smeberg v Cunningham,* 96 Mich 378, 385; 56 NW 73 (1893). However, this rule is not so easily applied where the street is contiguous to the water since there are abutting lots only on one side. Plager & Maloney, 46 U Det J Urb L 51. The crucial question is who owns the other half of the way which is clearly riparian property—the plattors, the "front lot" owners, or the persons to whom the way is dedicated?

Although there is conflicting authority in other jurisdictions, the issue was settled in this state by *Croucher.* There, the dedication of the plat described the plattors' land as lying south of a public highway that paralleled the lakeshore. The two lots at issue abutted the highway which, at those points, was in direct contact with the water. All of the deeds described the lots only by the lot numbers noted on the plat. The plattors conveyed each lot at issue twice. The question presented was whether the plattors had parted with all of their interest in each lot, including their riparian rights,

under the first conveyance. This Court concluded
that a fee interest in each lot, which included the
adjoining portion of the highway and the appurte-
nant riparian rights, passed to the first grantees,
subject to the public's use of the highway:

> Since lot 26 fronted upon the highway at a place
> where there was no land intervening between the
> lake and the opposite side of the highway, the
> conveyance of the lot on the south side carried
> with it, subject to express limitations appearing
> therein, the same riparian rights on the opposite
> side of the highway as it would had the lot itself
> been contiguous to the shore line.
>
> "Where a highway is laid off entirely on the
> owner's land, running along the margin of his
> tract, and he afterward conveys the land, the fee
> in the whole of the soil of the highway vests in his
> grantee. Likewise, where a street is laid out wholly
> on the owner's land and on the margin of his
> tract, so that he owns nothing beyond, the whole
> of the street opposite a lot bounded on the street
> passes to the grantee of the lot." 9 CJ p 203. See
> note citing numerous cases, including *Johnson v
> Grenell,* 188 NY 407 (81 NE 161, 13 LRA [NS] 551)
> [1907].
>
> As bearing upon the acquisition of riparian
> rights on the opposite side of the highway, we
> quote from the syllabus of the *Grenell Case:*
>
> "Where the owner of an island in a navigable
> river, which had been laid out into lots, with
> boulevards, streets and roads, according to a map
> upon which the lots were designated by numbers,
> sold a lot abutting upon a boulevard running along
> and extending to the waters of the river, the lot
> being conveyed as 'Lot numbered 34 as laid out on
> the map,' . . . and the deed contains no language
> from which it can be inferred that the grantor
> intended to reserve any interest in the fee of the
> boulevard itself or in the appurtenant riparian
> rights, the legal title to the whole of the boulevard
> in front of the lot in question, together with the
> riparian rights, passed to the grantee of the lot,
> subject only to the public easement or right of

passage over the boulevard," *Johnson v Grenell, supra. [Croucher,* 271 Mich 342-343.][7]

Although *Croucher* and *Johnson v Grenell* discussed only land abutting public ways, the holding of these cases can be stated more broadly: Unless a contrary intention appears, owners of land abutting any right of way which is contiguous to the water are presumed to own the fee in the entire way, subject to the easement. Since the owner's property is deemed to run to the water, it is riparian property. *Id.,* p 345. See also *Meridian Twp v Palmer,* 279 Mich 586; 273 NW 277 (1937); Plager & Maloney, 46 U Det J Urb L 59-61. Thus, plaintiffs are presumed to own the fee in the walk running along the front of their lots unless the plattors intended otherwise.

The question is whether the plat's dedication of the walk "to the joint use of all the owners of the plat" was intended to convey a fee in the walk to all subdivision owners or merely granted them an easement along the lakeshore. The intent of the plattors must be determined from the language they used and the surrounding circumstances. *Bang v Forman,* 244 Mich 571, 576; 222 NW 96 (1928). 4 Tiffany, Real Property (3d ed), § 977, p 89. The trial court found that the walk was merely an easement and that plaintiffs owned the fee in that portion of the walk that ran in front of their lots. This finding is not clearly erroneous. The phrase "joint use" standing alone does not ordinarily denote the passing of a fee interest in land. Defendants have pointed to no evidence in the record

[7] The *Croucher* Court recognized that contrary conclusions had been reached in other jurisdictions. However, it distinguished many of these cases because there was land intervening between the highway and the shore. 271 Mich 344-345. Intervening land owned by another prevents the land on the opposite side of the highway from being deemed riparian. See also *Fuller v Bilz,* 161 Mich 589; 126 NW 712 (1910); *Michigan Central Park Ass'n,* 2 Mich App 198.

which requires a different conclusion.[8] Therefore, defendants are not riparian proprietors.

## B

We next determine whether the plat's dedication of the walk evidences an intent to permit all subdivision owners to construct docks along the walk. The trial court concluded that the walk "is for the purpose of walking and not for the purpose of use of a portable dock." Again, this finding is not clearly erroneous. The term "joint use" standing alone does not evidence an intent to grant a right to construct docks, a right which normally is reserved to riparian owners.[9]

The trial court detailed the rights all subdivision owners possess:

It is apparent to this Court that the original plattors as well as the former owners intended that the "back-lot" owners would have the use of Gun Lake. The Court does not disturb these rights which the Court concludes means boating, fishing,

---

[8] The trial court's conclusion is supported by the fact that no definable "walk" actually exists along the shore and there is no evidence that such a walk ever existed. The abutting landowners have maintained and used that portion of the walk in front of their lots as though it were their property. There is evidence that at least one other "back lot" owner maintained a seasonal dock, but there is no indication where this dock was constructed. Finally, no evidence was presented as to the consideration paid for the properties at issue. If the original grantees of plaintiffs' lots paid substantially more for their property than was paid for comparably sized "back lots," this could indicate that the plattors intended to convey exclusive riparian rights to "front lot" owners. See Richardson, 48 Mich 91-92; Watson v Peters, 26 Mich 508, 516 (1873) (riparian rights is an important element in determining the price of lots and inducing buyers to purchase).

[9] In Cabal v Kent Co Rd Comm, 72 Mich App 532, 536; 250 NW2d 121 (1976), the Court of Appeals affirmed the trial court's conclusion that the maintenance of docks was reasonably appurtenant to the easement of access granted to defendants. In contrast, the trial court here found that the maintenance of docks was not within the scope of the walk's dedication.

sunbathing, and all other uses commensurate with the use of lakes such as Gun Lake. Since the Court has concluded that the defendants may use the lake as aforesaid, the defendants may, obviously, anchor their boats, however, such anchoring shall be in such a manner to allow the plaintiffs a reasonable use and enjoyment of their property rights.

In essence, the trial court concluded that all subdivision owners enjoy rights similar to those enjoyed by members of the public in navigable waters. As previously noted, an incident of the public's right of navigation is the right to anchor boats temporarily. The trial court incorrectly concluded that permanent anchorage was an incident of the lake's use.

We therefore conclude that defendants are not riparian owners because they only possess an easement interest in the walk. In addition, the construction of docks and permanent anchorage of boats is not within the scope of the plattors' dedication of the walk.

### III

The other possible source of defendants' right to construct a dock are the alleys which run perpendicular to the lakeshore. Cases involving a way which terminates at the edge of a navigable body of water are treated differently from those involving a way which runs parallel to the shore. *Meridian Twp,* 279 Mich 590-591; Plager & Maloney, 46 U Det J Urb L 50-51.

Public ways which terminate at the edge of navigable waters are generally deemed to provide public access to the water. *McCardel,* 404 Mich 96; *In re Vacation of Cara Ave,* 350 Mich 283, 291; 86 NW2d 319 (1957); Plager & Maloney, *supra.* A city,

on behalf of its citizens, is entitled to build wharves at the end of such streets to aid the public's access. *Nicholls v Charlevoix Circuit Judge,* 155 Mich 455, 458; 120 NW 343 (1909); *Kemp v Stradley,* 134 Mich 676, 678; 97 NW 41 (1903); *Backus v Detroit,* 49 Mich 110, 115; 13 NW 380 (1882). See also MCL 97.1 *et seq.;* MSA 5.1776 *et seq.* The right to build a wharf or dock does not depend on whether the public owns the fee in the way. *Backus, supra; Thom v Rasmussen,* 136 Mich App 608, 612; 358 NW2d 569 (1984). Rather, it is based upon the presumption that the plattor intended to give access to the water and permit the building of structures to aid in that access. *Backus,* pp 119-120; *Thom, supra.* Any dock which is constructed at the end of a common way must be made available for the use of those to whom the way is dedicated. *Backus,* p 120; *Thom,* p 613. See also 1 Farnham, § 144a, pp 673-676. The fact that only subdivision owners can use the alleys and docks would not require a different result.

Defendants did not build their dock at the terminus of an alley, however. They constructed their dock at the terminus of the easement created across lot 16 by the 1975 consent judgment. The use of the easement was narrowly defined to include only limited vehicular traffic, the hand carrying or dragging of small boats to and from the lake, and walking.[10] The trial court concluded that the easement agreement did not grant defendants

---

[10] The easement agreement, which was incorporated into the consent judgment, states in pertinent part:

"1. *Grant of Easement.* Grantors hereby grant and convey to Grantees an easement over and across that portion of Lot 16, Elms Plat, Gun Lake, hereinafter described, to be used for the purpose of providing access (as described and limited by this agreement) to Gun Lake from the premises now owned by Grantees so long as, and only so long as, all of the terms and conditions imposed upon Grantees under this agreement are fully complied with by Grantees.

* * *

the right to construct a dock. The Court of Appeals concluded that the permanent anchoring of boats was also not within the scope of the easement.

Plaintiffs own the fee in the land over which the easement runs and the bed of the lake at and beyond the end of the easement. Defendants' use of plaintiffs' land is defined by the terms of the easement agreement and must be confined to the purposes for which the easement was created. A person entitled to the use of an easement cannot materially increase the burden upon the servient estate beyond what was originally contemplated. *Delaney*, 350 Mich 687; *Bang*, 244 Mich 574.

The lower courts did not err in concluding that the consent judgment did not grant defendants the right to construct a dock. In addition, the Court of Appeals correctly held that the right to anchor boats permanently off the terminus of the easement was not permitted.

---

"4. *Use of Easement.* It is hereby agreed that use of said easement by grantees shall be limited to the following:

"(a) The driving of a motor vehicle upon the property twice a year by Grantee Doyle Elliott only (or his successor in interest) for the purpose of moving his shore station. Further use for motor vehicle travel shall be only with the permission of the Grantors, or their successors in interest and such permission shall not be unreasonably withheld.

"(b) The hand carrying or dragging by hand of small boats to and from Gun Lake by Grantees or their respective successors in interest in their respective lots in the Elms Plat, Gun Lake, Michigan.

"(c) Walking to and from Gun Lake by Grantees and their respective successors in interest in their respective lots in the Elms Plat, Gun Lake, Michigan.

"5. *Terms and conditions.* As an expressed condition to the continued existence of said easement and continued rights hereunder created, Grantees shall:

"(a) refrain from storing vehicles or any other property on the easement;

\* \* \*

"7. *Binding Effect.* Except as otherwise restricted as to use, this agreement and all rights and obligations hereunder created shall inure to and be binding on the parties hereto and their successors in interest, Forever."

The decision of the Court of Appeals is affirmed.

WILLIAMS, C.J., and RYAN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with CAVANAGH, J.

LEVIN, J. (*separate opinion*). The majority concludes that the circuit judge's findings concerning the meaning and scope of the dedication are not clearly erroneous except his finding that included in the scope of the dedication is the right to anchor boats permanently. The majority so concludes by characterizing the judge's findings as in "essence" findings that "all subdivision owners enjoy rights similar to those enjoyed by members of the public in navigable waters." Since the public has only the right to anchor boats temporarily in navigable waters, the judge "incorrectly concluded that permanent anchorage was an incident of the lake's use."

The majority's analysis recognizes that the scope of the dedication depends on the meaning to be ascribed to the words chosen by the plattor to express his intent assessed in light of the facts and circumstances. For the circuit judge to have simply concluded that the scope of the dedication was to confer on all subdivision owners the rights enjoyed by members of the public in navigable waters would not have appeared on review to be consistent with either the ambit of the inquiry or the plattor's apparent intent to confer on subdivision owners rights in addition to those they would have absent the dedication.

The majority has no adequate basis for declaring that in stating his conclusion that permanent anchorage of boats was within the scope of the dedication the judge was making a statement of law and not a finding of fact, while all his other statements were findings of fact not clearly erroneous. One would think that if the judge was stating findings of fact in the "boating, fishing, sunbathing, and all other uses" clause of his opinion he would be stating a finding of fact in the "anchor their boats" clause. The majority does not explain

how they divine that the judge shifted from fact to
law when he moved on from "boating, fishing,
sunbathing, and all other uses" to "anchor their
boats." Clearly the Court should at least remand
to the judge for clarification, rather than deciding
this aspect of the case by indulging in questionable
assumptions and characterization of his opinion.

The circuit judge found that the plattor, in
dedicating the twelve feet that run along the
lakeshore to "the joint use of all the owners of the
plat," intended to provide back lot owners with
rights greater than "rights similar to those en-
joyed by members of the public in navigable wa-
ters," and that among the rights so granted to
back lot owners was the right to anchor boats
permanently.

That finding being no less free of clear error
than the other findings affirmed by the Court of
Appeals and this Court, I would affirm that finding
as well.