DAVIS, J.
(dissenting). I respectfully dissent, because I conclude that long-settled precedent establishes that a “statutory ‘base fee’ ” is a fee ownership title capable of cutting off riparian rights and no precedent from this Court has established a contrary rule.
“At the common law, when the owner of land has laid it out into village lots, intersected with roads and public squares, such roads and squares are dedicated to the public use. But it is not the fee of the land which passes in such cases; the public have only an easement in the land, the fee itself for all other purposes remains in the owner.” Wanzer v Blanchard & Buckland, 3 Mich 11, 16 (1853). However, under a statutory dedication pursuant to the 1887 plat act, ownership in fee actually passes to the county, and if all statutory requirements are complied with, “the title, having become vested in the county thereby, remains there still, unless such discontinuance operated to revest the fee in the original proprietor, or his grantee ....” Id. (emphasis added).
This Court has explained that the “statutory ‘base fee’ ” conveyed by the plat act is “a fee which has a qualification annexed to it.” Kirchen v Remenga, 291 Mich 94, 112; 288 NW 344 (1939). This is hardly a clarification, and even Justice COOLEY regarded it as unclear whether a statutory dedication conveyed rights that were more in the nature of a fee or an easement. Wayne Co v Miller, 31 Mich 447, 448-449 (1875).[1] *188 However, 22 years earlier, this Court had clearly concluded that a statutory dedication conveyed a real, ordinary fee title. See Wanzer, 3 Mich at 16. And 15 years later, this Court equally clearly concluded that a statutory dedication vested the fee of the dedicated land in the county. Village of Grandville v Jenison, 84 Mich 54, 65-66; 47 NW 600 (1890).[2] By the 1930s, it was settled that although a “base fee” carried with it conditions and limitations, it was not qualitatively a different kind of ownership interest. Rathbun v Michigan, 284 Mich 521, 534-536; 280 NW 35 (1938).
This Court’s explanation in Kirchen that the term “base fee” was “used in the sense of a fee which has a qualification annexed to it” relied on 1 Bouvier’s Law Dictionary (Rawle’s 3d rev), p 329. Kirchen, 291 Mich at 112. The rest of the definition of “base fee” in Bouvier’s Law Dictionary explains that the “qualification” to which it refers “must be determined whenever the annexed qualification requires” and that “[t]he proprietor of such a fee has all the rights of the owner of a fee-simple until his estate is determined.” See 1 Bouvier’s Law Dictionary (1897). In this context, “determination” is essentially a synonym for termination, or something coming to an end. See id. Therefore, Kirchen never held that a “base fee” is not a fee interest; quite the contrary, it held that it is a fee interest — -just one that could be terminated pursuant to an attached restriction.
This is consistent with the definition of a “base fee” in Black’s Law Dictionary (8th ed). Black’s Law Dictionary *189 treats “base fee” as a synonym for “fee simple determinable,” meaning either “[a]n estate that will automatically end and revert to the grantor if some specified event occurs” or “an estate in fee simple subject to a special limitation.” Black’s Law Dictionary (8th ed), p 649. So the definitions relied on by Kirchen and present in Black’s Law Dictionary both indicate that the actual estate held by the owner of a “statutory ‘base fee’ ” is indistinguishable from that of a fee simple other than the possibility of the estate terminating at some point.
Riparian rights attach to land that actually touches water, but “interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner.” Hilt v Weber, 252 Mich 198, 218; 233 NW 159 (1930). Because a base fee is a fee title, interposition thereof between a property owner’s lot and the edge of water will cut off the lot owner’s riparian rights.[3]
This Court has seemingly held to the contrary, but a careful reading of that precedent reveals that this Court actually reached no such contrary conclusion. In Croucher v Wooster, 271 Mich 337; 260 NW 739 (1935), the plaintiffs claimed to own property between a road and Gull Lake. According to the plat map, the defendants’ lots were separated from the edge of the lake only by the road, and, as with the lots in the instant case, the property descriptions terminated at the road. The plat map showed no property between the road and the water. This Court concluded that in the absence of an expressed contrary intent, if a lot was bounded by a *190 road that itself was not separated from the water by any land, the owners of that lot possessed riparian rights in the water across the road from the lot.
Superficially, this appears to create a bright-line rule, and, indeed, panels of the Court of Appeals believed that it did. See McCardel v Smolen, 71 Mich App 560, 564-565; 250 NW2d 496 (1976), and the cases cited therein. But the Court of Appeals did not analyze Croucher-, it simply concluded that Croucher had settled the issue. However, the roadway under discussion in Croucher had been established by user and apparently had already been in existence before the plat was created, so it was a common-law road and therefore an easement, not a “base fee” road created pursuant to the plat act.[4] Croucher distinguished an Illinois case in which the opposite result was reached because of a state law “by which the fee of the land under a dedicated street is held to be in the municipal corporation,” establishing that the abutting lot did not extend under the road. Croucher, 271 Mich at 344, citing Illinois & Michigan Canal Bd of Trustees v Haven, 11 Ill 554 (1850). Croucher observed that “[confessedly that would not be true in the instant case.” Croucher, 271 Mich at 344. It is true in the case at bar.
This Court later explicitly clarified that the relevant inquiry is “whether the abutting landowner owns the fee in the way which separates his property from the water . . . .” Thies v Howland, 424 Mich 282, 290; 380 NW2d 463 (1985). If the roadway is an easement, the owners of land abutting it actually own the land under the easement in fee all the way to the water, so their property is riparian. In Thies, this Court explicitly held that the public way was an easement. Id. at 293. And in *191 Croucher, it was clear from the context that the public way was an easement. So in both Croucher and Thies, the holdings that the property owners had riparian rights naturally resulted from the fact that no fee title interposed itself between the lots and the water.
It appears that in McCardel and the cases cited therein, the Court of Appeals simply assumed that Croucher had established a bright-line rule, when, in fact, it had not. It is undisputed that an easement is not fee ownership. And well-settled Michigan precedent establishes that a statutory “base fee” under the plat act is fee ownership.[5] Therefore, absent a contrary intent expressed by the plat proprietor, a public road created under the plat act will cut off the riparian rights of abutting landowners. McCardel and its predecessors were incorrectly decided.
Nonetheless, I recognize that there are cases in which the soundest and most pragmatic application of stare decisis would have this Court decline to overrule incorrectly decided precedent. This Court should, after all, consider such issues as the practical workability of the rule, the extent of reliance thereon, whether chaos or other harm would ensue from overruling it, and whether a change in facts, jurisprudence, or perspective has altered the rule’s significance. See Planned Parenthood of Southeastern Pennsylvania v Casey, 505 US 833, 854-855; 112 S Ct 2791; 120 L Ed 2d 674 (1992).
This may be one of those cases in which the incorrect but, apparently, extensively relied-upon rule from McCardel and its predecessors should be allowed to stand. It may be so notwithstanding the fact that the abutting property owners may not have *192 been taxed for riparian property and may reap a windfall at the expense of the public’s right of access to the water, even though plain statutory language indicates that those landowners should have no such rights. However, under the circumstances, I decline to address that possibility.
I state only that the McCardel line of cases from the Court of Appeals and the majority today misread the precedent of this Court. I decline to address whether the misreading of Croucher should be upheld today, because I am of the view that it is not possible to draw reliable conclusions about what the law should be without first understanding what the law is and how it came to be that way. From the majority’s conclusion that a “statutory ‘base fee’ ” is not true fee ownership, I respectfully dissent.
CAVANAGH and HATHAWAY, JJ., concurred with DAVIS, J.

 A few years later, Justice Cooley would explain that the interest passed was fee title, but that this was of “no special importance” because the governmental entity nevertheless held that title “only in trust for street purposes.” Backus v Detroit, 49 Mich 110, 115; 13 NW 380 (1882). Of course, Backus is only of marginal relevance because the street at issue there terminated at a river; it did not run parallel to the river.

 Village of Grandville has been cited more recently for the proposition that a statutory road dedication does indeed vest actual fee title in the county, albeit to be held in trust. Village of Kalkaska v Shell Oil Co (After Remand), 433 Mich 348, 354 n 11; 446 NW2d 91 (1989); Little v Hirschman, 469 Mich 553, 557 n 4; 677 NW2d 319 (2004).

 Of course, the overriding consideration is always the intent of the plat proprietor, so if the lot is described as having riparian rights or touching the water, that is effectively a reservation of rights by the plat proprietor— specifically, a reservation of riparian rights for the lot. In the instant case, the lot descriptions in the plat very clearly did not extend to the water’s edge.

 This would have been the situation for most public ways that predate the first plat act. See Baker v Johnston, 21 Mich 319, 340 (1870).

 In other words, as this Court has so often explained, when the Legislature used the word “fee,” the Legislature meant exactly what it said.