*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIRK P. BLOOMQUIST, JAMIE L. BLOOMQUIST, CHERYL D. OLSEN, Individually, as Next Friend of VERNON OLSEN, JR., and as Trustee of the OLSEN LIVING TRUST, MARY KATHLEEN BRUNN, BETH ANN BRUNN, DANIEL P. VANDERVEEN, as Trustee of the DANIEL P. AND BONNIE J. VANDERVEEN TRUST, and BONNIE J. VANDERVEEN, as Trustee of the DANIEL P. AND BONNIE J. VANDERVEEN TRUST,

UNPUBLISHED
March 14, 2024

Plaintiffs/Counterdefendants-
Appellees/Cross-Appellants,

v

No. 362167
Lake Circuit Court
LC No. 20-009892-CH

GORDON W. DEPREE, as Co-Trustee of the GORDON W. DEPREE AND JULIE DEPREE JOINT LIVING TRUST, JULIE DEPREE, as Co-Trustee of the GORDON W. DEPREE AND JULIE DEPREE JOINT LIVING TRUST, VIRGINIA M. VANDERWALL TRUST, CURTIS S. VANDERWALL, as Trustee of the CURTIS AND DIANE VANDERWALL TRUST, DIANE K. VANDERWALL, as Trustee of the CURTIS AND DIANE VANDERWALL TRUST, NATHAN VANDERMEER, PAMELA VANDERMEER, WILLIAM ZWYGHUIZEN, and JODI ZWYGHUIZEN,

Defendants/Counterplaintiffs-
Appellants/Cross-Appellees.

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

-1-

In this property action, defendants/counterplaintiffs/cross-appellees ("defendants") appeal as of right the trial court's May 11, 2022 judgment, in which it memorialized an earlier grant of summary disposition to plaintiffs/counterdefendants/cross-appellants ("plaintiffs") under MCR 2.116(I)(2). We reverse and remand.

## I. FACTUAL BACKGROUND

This dispute arises as a result of a series of disagreements about access to a beach abutting certain properties in Lake County, Michigan. The properties at issue are located in the Pine Grove Beach subdivision. The following are two visual representations of the disputed areas in Block 9, 10, and 15 of the subdivision. The first graphic shows both blocks. To give the viewer a sense of where the plats are, Lots 4-8 of Block 9, pictured in blue, are lakefront homes with beach access to Big Star Lake, which is north of the properties. An alley runs between those lots and Lots 21-25, pictured in pink and blue. Lots 1-5 of Block 15, and Lots 13 and 15 of Block 10, shown in pink, are one street back from the lake and do not have direct lake access.





The Pine Grove Beach subdivision was platted in 1925. The cottages that the parties now own used to be part of the Pine Grove Beach Resort. The resort was owned by Milton and Julia VanDusen, who are not parties to this case. The VanDusens sold the resort in the 1970s, and the lots were divided off and individually sold. When the lots were divided, the backlot properties owned by plaintiffs, which do not have direct beach access, were each granted an express 10-foot easement between the properties owned by defendants, as pictured above. The deeds to plaintiffs' properties indicate that each of them included express easements granting access to the lake.

The parties largely dispute whether plaintiffs have obtained an easement by prescription to access the entire beach in front of defendants' houses (collectively referred to as the "shared beach"). According to plaintiffs, cottage owners accessed and used the shared beach for decades. For example, according to plaintiff Bonnie VanderVeen,

> I and my husband have previously used and today do actually use the common shared beach for beach and recreational activities and have seen others from the division do the same including sunbathing, watersports, swimming, sunbathing, lounging, and other beach/water-side activities each year during summer months. From my firsthand knowledge going back to childhood, that occurred yearly for decades when my husband's family held the property as well.

According to plaintiff Jamie Bloomquist,

I and my husband (and even others, including my children) have regularly and actually used, each and every summer, the common shared beach for things like swimming, fishing, pulling our boat in and out to pull skiers, lying on the beach, lounging (both with and without beach chairs), sunbathing, beach games, and like-kind activities in a manner that was and is open and visible which would be contrary to the rights of a properties' owner many times each summer season, uninterrupted, in excess of 15 years since becoming owners of our cottage by having the claimed right to do so. Further, we have, uninterruptedly each summer season, installed our dock and moored our boat in the same general area without permission of any Defendant because we believe that we have the right to do so in a manner that was open and visible manner which would be, for lack of actual existing right, be contrary to the rights of the relevant properties' owner for more than 15 years since becoming owners of our cottage.

Defendants disagree with the notion that the shared beach was truly a common space for everyone in the neighborhood to use at will. In 2018, several breakdowns in neighborly relations caused defendants to begin to try to limit access to the shared beach. The impetus for this breakdown appeared to be a large party held by Daniel and Bonnie VanderVeen on the beach in front of Lots 6 and 7. Lot 6 is owned by Curtis and Diane VanderWall, and Lot 7 is owned by William and Jodi Zwyghuizen. The VanderVeens are backlot residents who own Lot 1, the eastern half of Lot 3 and the western half of Lot 23 in Block 15. After the party, the Zwyghuizens posted 'private property' signs on the beach in front of their cottage and sent the VanderVeens a letter from their attorney, informing them that they could no longer use the beach. The same letter was sent to the Mary and Beth Brunn, who own Lots 13 and 15 in Block 10.

After the letters were sent, conditions between the parties continued to break down, until ultimately plaintiffs filed a complaint against defendants. Count I of the complaint pertained to the scope of the express easements in their deeds; plaintiffs asked the trial court to confirm the scope of the easements and quiet title to the easements in their favor. In Count II, plaintiffs claimed that their express easements had each been expanded by prescription to encompass the shared beach area north of Lots 4 through 8 of Block 15. Plaintiffs alleged:

Plaintiffs and/or their predecessors in interest have acquired a fuller easement by prescription from Defendants and/or their predecessors by using the area north of Lots 4-8 for lounging, sunbathing, recreating, picnicking, and enjoying the waterside area as a recreational swimming beach (and activities related thereto) in an open, notorious, hostile manner, without any permission provided to them directly, under a claim of right for a period greater than 15 years.

Plaintiffs asked the trial court to quiet title in their favor and determine that they had obtained a broader easement by prescription for various recreational activities.

Plaintiffs later filed an amended complaint. The amended complaint added Nathan and Pamela VanderMeer as defendants, and added a third count against defendants. Under Count III, plaintiffs claimed that they obtained the right, by prescription, to place seasonal docks in the water on or near their 10-foot express easements. Plaintiffs explained:

The equitable doctrine of prescriptive easement provide[s] these Plaintiffs the proper legal right and title to place seasonal dock(s) and to seasonally moor boats upon or near the easement as these Plaintiffs and/or their predecessors in interest have acquired a fuller easement by prescription from Defendants and/or their predecessors by "overusing" the express easement in an open, notorious, hostile manner, without permission provided to them, under a claim of right for a period greater than 15 years[.]

Plaintiffs thus asked the trial court to enter a judgment quieting title to the contested land in their favor, as well as to find that prescriptive easements granted them access to the shared beach and to place docks in the water.

Defendants filed a countercomplaint setting forth 10 separate claims. Defendants noted that only their lots had water access, and that the plat created a walkway along the lake's edge that defendants labeled the "shore walk." Under Count I of the countercomplaint, defendants argued that plaintiffs had wrongly used their easements and the shore walk for purposes other than merely swimming and boating, as permitted in plaintiffs' express easements. Under Count II, defendants argued that plaintiffs had not established a prescriptive easement over the shared beach; instead, defendants contended that the so-called shared beach did not exist, and that the land north of Lots 4 through 8 were was actually part of defendants' property. Under Counts III and IV, defendants argued that their properties are riparian, and that plaintiffs had interfered with their riparian rights by using the 10-foot areas granted by express easement for lounging, sunbathing, and docking boats, among other activities not provided for in their deeds. Under Count V, defendants argued that plaintiffs' use of their easements violated Lake County zoning ordinances pertaining to multifamily and nonconforming property uses. Under Count VI, defendants alleged that plaintiffs trespassed on their properties by placing docks and mooring boats in the lake without permission. Under Count VII, defendants argued that plaintiffs had violated state law by failing to obtain marina permits to place docks or boats in the water. Defendants alleged that plaintiffs use of their easements, the shore walk, and their unlawful use of the shared beach constituted a nuisance in Count VIII. In Count IX, defendants argued that the trial court was required to utilize the balancing test for determining the scope of an easement set forth in *Little v Kin* (*Little II*), 468 Mich 699; 664 NW2d 749 (2003), and that the *Little II* balancing test weighed in defendants' favor. Finally, in Count X, defendants asked for preliminary and injunctive relief against plaintiffs.

Defendants also filed an answer to plaintiffs' first amended complaint, and generally denied liability. Along with the answer, they filed a number of affirmative defenses. Of particular relevance to this appeal, defendants claimed that plaintiffs' asserted rights to the easements at issue were illegal, unlawful, and would interfere with defendants' riparian rights. They further alleged that plaintiffs' use of the easements violated a Lake Township zoning ordinance and several state laws. Additionally, they again noted that plaintiffs' claims were barred by the balancing test set forth in *Little II*, 468 Mich 699. Finally, they claimed that plaintiffs had not met the elements of a prescriptive easement and that they could not use boats or boat docks in the lake.

Plaintiffs filed a motion for summary disposition under MCR 2.116(C)(9) (no valid defense) and (C)(10) (no genuine issue of material fact) in November 2020. Plaintiffs argued that they had a right to use the shore walk to traverse the beach. They also argued that the express

easement in each of their deeds granted the right to build docks and moor boats in the water. Plaintiffs explained:

> Looking to the chain of title for Plaintiffs' particular parcels, each Plaintiff was granted an express easement consisting of ten feet along various north-south lot boundary lines between what was then Lake Shore Drive and Big Star Lake itself . . . . The easements' "purpose" was for "Access to and from Big Star Lake for private swimming and boating purposes." See *supra*. Swimming and boating are traditional riparian rights . . . . And because a reasonable dock is incident to the reasonable and proper enjoyment of the privately-granted easement, such is also included within the grant.

Plaintiffs argued that no material questions of fact existed as to these rights, and asked the trial court to grant summary disposition in their favor.

In response, defendants argued that plaintiffs' claims were largely premature because discovery was incomplete. They further argued that plaintiffs failed to prove that their express easements provided them with anything more than access to the lake, rather than full riparian rights. According to defendants, allowing plaintiffs to expand the easement to provide the right to place seasonal or permanent docks and moor boats in the water would infringe on defendants' riparian rights. They further argued that even if the right to place a dock or moor boats on the easement did exist, the court would still need to conduct the *Little II* balancing test to determine whether doing so was necessary to the enjoyment of the easement. Defendants claimed that the *Little II* test weighed in their favor and that plaintiffs should not be allowed to place docks or moor boats on their easements. Finally, defendants argued that plaintiffs' motion for summary disposition was frivolous and designed to prevent defendants from obtaining discovery.

Plaintiffs replied that the deeds to each backlot property contained an easement allowing access to the lake. They argued that "[s]mall, simple, non-permanent seasonal shared dock[s] by the easement holders while fully kept within the 10 [foot] easement areas, are easily incident to the reasonable and proper enjoyment of a boating easement with modern boats and thus are within the grant of the easement." However, they noted that if the court disagreed, they would amend their complaint to assert a right to place docks in the water via prescriptive easement.

A hearing was held on the motion, and the trial court elected to grant it in part, finding that the easements granted plaintiffs the right to "access [the lake] for private swimming and boating purposes," but not to engage in "sunbathing or mooring boats, or docks, anything of that nature." The trial court later entered an opinion and order granting the motion for summary disposition in part, denying it in part, and also granting summary disposition to defendants in part on Count I of their countercomplaint under MCR 2.116(I)(2). The trial court held that all of the plaintiffs had recorded express easements giving them "the right of ingress and egress to and from Big Star Lake only," but not allowing for "sunbathing, lounging, picnicking, the erection or use of a dock, boat hoist, or other structure, or the seasonal mooring of a boat or watercraft." The court further held that the shore walk was "an express easement depicted on the Plat of the Pine Grove Beach Subdivision for the use of all lot owners in the Plat, is to be used only for walking, and does not confer riparian rights to the Plaintiffs." The trial court made no pronouncement on the uses to be

permitted on the shared beach, indicating that the order was not a final order and did not close the case.

Plaintiffs filed a second amended complaint in June 2021. Under Count I, the Bloomquists, Olsens, and VanderVeens asked the trial court to clarify the scope of their easements and find "that said easements include the right of having ingress and egress right to and from Big Star Lake, the rights for private swimming and boating, and the ability to erect a seasonal dock[.]" Under Counts II and III, the Bloomquists, Olsens, and VanderVeens again asked the trial court to find that they had acquired an expanded easement by prescription to the shared beach, as well as an easement by prescription to place seasonal docks on the 10-foot beach areas granted to them by express easement.

In December 2021, defendants filed four separate motions for summary disposition, one each for claims brought against them by the Bloomquists, Olsens, Brunns, and VanderVeens. Each motion raised the same general claims against the named plaintiffs. Defendants argued that the plat does not show anything that could be identified as a "shared beach," and that it therefore does not exist. They further argued that their lots are riparian and subject only to access via the shore walk, to which plaintiffs have an easement for walking along the shoreline. Defendants explained that only they had these riparian rights, and that plaintiffs have no similar rights as a result of the 10-foot easements present in the deeds to their lots.

Defendants next argued that none of the plaintiffs could establish a prescriptive easement allowing access to the shared beach. This is the only point on which the motions for summary disposition differ somewhat. Regarding the Bloomquists and VanderVeens, defendants argued that their attempt to establish a right to access the beach by prescriptive easement because they had not given notice of hostile intent and could not establish adversity. Regarding the Olsens and Brunns, defendants argued that they could not establish a right to access the beach via prescriptive easement because they could not establish that they used the shared beach in an open, notorious, and continuous manner for at least 15 years, had failed to give notice of hostile intent, and additionally could not establish adversity. Finally, defendants argued in all four motions that the various plaintiffs could not establish the right to place boats or docks in the water via prescriptive easement, as well as that the *Little II* balancing test weighed in defendants' favor.

Plaintiffs filed a joint response, which was additionally combined with a cross-motion for reconsideration of the court's earlier ruling that plaintiffs were not entitled to moor boats or place docks in the water via express easement. Plaintiffs argued that many of defendants' claims were not properly briefed. Plaintiffs further argued that reconsideration of the court's ruling regarding the express right to place docks and boats in the water was warranted because when the easements were granted by deed, Michigan law indicated that the right to maintain docks was "reasonably appurtenant" to an easement that provided the right to boat in a lake. See *Cabal v Kent Co Rd Comm*, 72 Mich App 532, 536; 250 NW2d 121 (1976). According to plaintiffs, "[w]hen reviewing these issues, 'the rights of nonriparian owners should be determined by examining the language of the easement and the circumstances existing at the time of the grant,' and not what the laws and facts are today.' " Given that the easements granted access to the lake for swimming *and* boating, plaintiffs argued that they should be entitled to put boats and docks on their easement properties.

A hearing on the motions was held in February 2022. The trial court indicated to the parties that it would take their arguments under advisement and issue a ruling at a later date. Before the hearing adjourned, counsel for defendants indicated that she would file a motion to strike plaintiffs' affidavits. On March 1, 2022, defendants filed their motion to strike plaintiffs' affidavits. They argued that portions of the affidavits submitted Jamie and Kirk Bloomquist, Cheryl Olsen, Mary and Beth Brunn, and Daniel and Bonnie VanderVeen should be struck "because they contain [in]admissible hearsay, opinions, factual conclusions, general denials, and statements that contradict the Plaintiffs' deposition testimony, and one of them is unsigned in violation of Michigan law." Along with the motion, defendants submitted a 23-page document detailing the deficiencies in each affidavit.

Sixteen days later, on March 17, 2022, the trial court issued an opinion granting summary disposition to plaintiffs under MCR 2.116(I)(2). The trial court found that plaintiffs had the right to walk on the shore walk, and that the shore walk was "similar to a sidewalk." The court further found that plaintiffs, as the occupants of the backlot properties, could access the shared beach for "swimming, sunbathing, boating, and fishing." Additionally, the trial court opined that plaintiffs could either tie boats to defendants' docks with permission or place docks of their own on their 10-foot easement areas.

On May 11, 2022, the trial court entered a judgment memorializing its order granting partial summary disposition to defendants. The trial court specifically held:

> The Defendants as owners of their respective beach front lots are riparians. As riparians they have fee simple to the real estate between their lot lines and the waters of Big Star Lake, subject to the ten feet shore walk as depicted on the plat. Said shore walk as previously indicated may be used together with all lot owners in the plat for walkway purposes, similar to a sidewalk.

> Plaintiffs Bloomquist[s] and Brunns, as owners of Lot 2, Block 15 and Lot 15, Block 10, respectively, have an express easement, ten feet in width the centerline of which is the common line between Lots 4, 5, 24 and 25, Block 9 for the purpose of access to and from Big Star Lake for private swimming and boating purposes.

> Plaintiffs Vanderveen[s] and Olsens, as owners of Lot 1, Block 15 and Lot 21, Block 9, respectively have an express easement ten feet in width the centerline of which is the common lot line between Lots 6, 7, 22, and 23, Block 9 for the purpose of access to and from Big Star Lake for private swimming and boating purposes.

> While the Court has previously found said easements do not expressly grant the right to have seasonal docks, the Court finds the right to seasonal dock(s) prescriptively ripened to the benefit of the properties owned by Plaintiffs. The location of one shared dock at each of the granted easements to extend to the waters of Big Star Lake is allowed.

Lastly, Plaintiffs have a private easement for the continued use of the lands between the shore walk and the water edge of Big Star Lake for the purposes of swimming, sunbathing, boating, and fishing, but such use is limited to the occupants of Plaintiffs cottages. Any further uses are subject to the riparian owners['] permission as such is not a public beach.

Defendants moved for reconsideration, arguing that 1) the trial court had unlimited discretion to grant the motion; 2) the court erred by failing to analyze each plaintiff's claim on a lot-by-lot basis; 3) plaintiffs' access to the shore walk could not be expanded by prescription to encompass the beach area known as the shared beach; 4) the trial court erred by failing to address defendants' motion to strike plaintiffs' affidavits, 5) the court erred by failing to hold an evidentiary hearing to address the *Little II* factors; 6) the court erred by failing to address all of defendants' counterclaims and affirmative defenses. The trial court denied the motion, noting that defendants had merely presented the same issues that were already ruled on by the court, and finding that defendants had failed to show that the court committed palpable error, the likes of which could result in a different ruling on reconsideration. This appeal followed.

## II. DIRECT APPEAL

## A. EASEMENT RIGHTS

## 1. PRESCRIPTIVE EASEMENTS

The crux of the matter at hand concerns the trial court's handling of whether plaintiffs established entitlement to access to the beach via prescriptive easement. The trial court ruled in favor of plaintiffs under MCR 2.116(I)(2). We hold that this was error.

Defendants moved for summary disposition under MCR 2.116(C)(10). The trial court granted summary disposition to plaintiffs under MCR 2.116(I)(2). This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Conversely, "[a] trial court may award summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Hambley v Ottawa Co*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 365918); slip op at 3.

Defendants first contend that the trial court erred by concluding that plaintiffs have acquired an easement by prescription for access to the shared beach area between the shore walk and the water's edge north of defendants' lakefront properties. Defendants' properties are riparian, meaning that each property "includes or is bounded by a natural watercourse[.]" *Thies v Howland*, 424 Mich 282, 287-288; 380 NW2d 463 (1986). Riparian owners generally possess "the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off

the owner's shore." *Id*. at 288 (citations omitted). Nonriparian owners typically have "a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming," which can be expanded by easement. *Id*. The parties appear to agree that plaintiffs' deeds each provide for an express, 10-foot easement offering access to the water for ingress and egress, meaning that plaintiffs have the right to swim and temporarily put boats in the water on their easements. The parties also appear to agree about the existence of a public shore walk area, which runs east to west across the beachfront, although there is some degree of disagreement about the width of the shore walk; defendants complain that the trial court's description of the shore walk as being 10 feet in width was erroneous. The parties also dispute whether plaintiffs have obtained an easement by prescription to the rest of the beach area directly abutting the lake.

"An easement is a limited property interest; it is the right to use the land burdened by the easement for a specific purpose." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020). Easements can "be created by express grant, by reservation or exception . . . by covenant or agreement," *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 399; 964 NW2d 846 (2020) (quotation marks and citation omitted), or by prescription, *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). In *Smith*, 331 Mich App at 215-216, this Court explained:

> The land burdened by [an] easement is the servient estate, and the land benefited by the easement is the dominant estate. An easement holder's use of the easement is limited to the purposes for which the easement was granted and must impose as little burden as possible to the fee owner of the land, but the easement holder nevertheless enjoys all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement. The necessity of an easement holder's conduct can be informed by the purpose and scope of the easement in addition to the easement holder's accustomed use of the easement.
>
> A fee owner may use his or her land on a servient estate for any purpose not unreasonably inconsistent with the rights of the easement holder . . . . Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted. The scope of an easement may only be determined by reference to extrinsic evidence if the text of the instrument is ambiguous. [Quotation marks and citations omitted.]

Prescriptive easements are "based upon the legal fiction of a lost grant, and results from action or inaction leading to a presumption that the true owner of the land, by his acquiescence, has granted the interest adversely held." *Astemborsk v Manetta*, 341 Mich App 190, 197-198; 988 NW2d 857 (2022) (quotation marks and citation omitted). To establish such an easement, plaintiffs must demonstrate:

> First, continued and uninterrupted use or enjoyment; second, identity of the thing enjoyed; third, a claim of right adverse to the owner of the soil known to and acquiesced in by him. The accepted rule is that the user must be exercised by the owner of the dominant tenement, and must be open, peaceable, continuous, and as of right. It is sometimes declared that it must also be exclusive, but the term "exclusive use" does not mean that no one may use the way except the claimant of

the easement. It means no more than that his right to do so does not depend on a like right in others. [*Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679-680; 619 NW2d 725 (quotation marks, citations, and comma omitted).]

"Adverse or hostile use is use that is inconsistent with the right of the owner, without permission asked or given, that would entitle the owner to a cause of action against the intruder for trespassing." *Mulcahy v Verhines*, 276 Mich App 693, 702; 742 NW2d 393 (2007). "Mere permissive use of another's property, however, will not create a prescriptive easement." *Plymouth Canton*, 242 Mich App at 679. "If no single period of adverse use amounts to the 15-year statutory period, a party claiming a prescriptive interest may tack the possessory periods of their predecessors in interest to aggregate the 15-year period of prescription if the claimant can show privity of estate." *Marlette Auto Wash*, LLC, 501 Mich at 203; 912 NW2d 161 (quotation marks and citation omitted). Regardless, a plaintiff claiming entitlement to land by prescriptive easement must do so by "clear and cogent evidence," meaning that "the evidence must clearly establish the fact of possession and there must be little doubt left in the mind of the trier of fact as to the proper resolution of the issue." *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988).

The trial court concluded that plaintiffs have an easement by prescription "for the continued use of the lands between the shore walk and the water edge of Big Star Lake for the purposes of swimming, sunbathing, boating, and fishing," as well as the right, by prescription, to place "one shared dock at each of the granted easements" on Big Star Lake. Defendants claim that plaintiffs have failed to show that they gave notice of hostile intent, as well as that they used the land in a manner hostile or adverse to defendants' ownership interests.

Regarding whether plaintiffs gave notice of intent, defendants generally argue that according to *Du Mez v Dykstra*, 257 Mich 449, 451; 241 NW 182 (1932), "while use alone may give notice of adverse claim of inclosed [sic] premises, the weight of authority is that it raises no presumption of hostility in the use of wild lands." The *Du Mez* Court further explained:

This distinction is in recognition of the general custom of owners of wild lands to permit the public to pass over them without hindrance. The custom had been particularly general as to logging roads over timber lands until the carelessness of hunters and campers produced such fire hazards that the protection of timber required the permission to be circumscribed. The tacit permission to use wild lands is a kindly act which the law does not penalize by permitting a beneficiary of the act to acquire a right in the other's land by way of legal presumption, but it requires that he *bring home to the owner, by word or act, notice of a claim of right before he may obtain title by prescription.* [*Id*. (emphasis added.) ]

Thus, defendants essentially contend that the shared beach and the water are "wild lands," and that plaintiffs' use alone was not enough to give defendants notice of plaintiffs' hostile intent. Although there is no standard definition of "wild lands," land that was "uninclosed [sic], covered with second growth timber, and ha[d] old logging roads on it" was held to be wild and unenclosed under *Du Mez*. *Id*. at 449-450. Under that definition, the land here is not "wild;" it is little more than a manicured beach on a busy lake that abuts a neighborhood. Accordingly, there is no elevated burden on plaintiffs to give notice of hostility. Unlike the plaintiffs' use of the land in

-11-

*Du Mez*, plaintiffs' mere use of the beach without permission in this instance was sufficient to put defendants on notice of their hostile intent. *Id*. at 451.

However, even though defendants have not supported their argument regarding notice of hostile intent, plaintiffs have ultimately failed to prove, by *clear and cogent evidence*, that they used the shared beach in an adverse or hostile manner for the requisite period of 15 years. According to Kirk Bloomquist, he and his family used the shared beach without permission for the entire time they owned their property and even when they were renting the property they now own. The Bloomquists bought the house in 2003 and used the shared beach until approximately 2019, when neighborly relations between plaintiffs and defendants began to break down. Jamie Bloomquist confirmed this, and added that they had placed a dock in the water from approximately 2001 onward without permission from defendants, noting that they purchased pieces of the dock from relatives of Curtis and Diane VanderWall in approximately 2002, and that Gordon DePree had shown them where to put their dock in the water around that same time.

Cheryl Olsen attested that she and her husband placed a dock in the water in 1990 without permission from any adjacent landowners and kept it there, with boats attached, until 2014. She further stated that "[o]ver the course of decades since 1990 . . . my husband and I have, each summer, used the shared common beach . . . for many different activities including sunbathing, swimming, lounging, and many other beach-side and water-side activities during the summer months." Cheryl never believed that she had to ask permission to place a dock in the water or use the shared beach.

Beth Brunn attested that she has been going to the Pine Grove cottages since 1973, and that since that time,

> [t]he shared common beach has been used, countless times, for many different beach activities and water-side activities during the summer months, including by me, members of my family, and many others . . . throughout each and every summer . . . this was understood that this was a right, not something based on someone's permission.

Beth also stated that the owners of the Brunn cottage had placed a dock in the water and seasonally moored boats on it since 1973, and that the dock continued to be placed in the water intermittently since 2000. At no point was there a 15-year period where the dock was not placed in the water during the summer. Mary Brunn reiterated essentially the same information in her affidavit.

Finally, the VanderVeens testified that they and their predecessors, Daniel VanderVeen's parents, consistently used the shared beach, and saw others do the same, to engage in "sunbathing, watersports, swimming, sunbathing, lounging, and other beach/water-side activities each year during summer months[,]" without permission from any lakefront property owners. They further attested that Daniel VanderVeen's uncle placed a dock in the water from 1974 through 1981, and that his father took over maintaining the dock from 1981 through 1998. Daniel's father stopped putting a boat out to make room for people swimming, and instead moored his boat at the dock that is now owned by the Zwyghuizens. Daniel attested that the VanderVeens "never forfeited, gave up, or terminated the prescriptive rights my uncle and father had secured to placing a dock upon the eastern side of the common shared beach."

To the contrary, the Zwyghuizens claim that they only allowed plaintiffs to use the beach with permission, and told plaintiffs so multiple times throughout the years. Regarding the VanderVeens' dock, the Zwyhguizens claim that the VanderVeens were only able to attach their dock to the Zwyghuizens' dock with permission. The VanderWalls agreed that plaintiffs could only use the beach with their permission as riparian landowners, and that the Olsens in particular *never* placed a dock in the water without express permission from the VanderWalls. Gordon DePree stated that the Bloomquists only placed docks in the water with his permission, and that in general, plaintiffs could not use the beach without permission. The same was repeated by the VanderMeers, who similarly believed that plaintiffs could not access the shared beach without permission from defendants.

Aside from depositions and affidavits, the plaintiffs and defendants also submitted photographs of various individuals using the beach or swimming in the lake over the years. None of the photographs are dated, and that instead, the parties have handwritten dates—sometimes exact, sometimes approximate—next to each photograph. Our review of the record indicates that all of the evidence available for determining whether plaintiffs established an easement by prescription to the shared beach or to place docks on their easements consists of documentary evidence in the form of affidavits, depositions, and photographs. Plaintiffs and defendants plainly disagree about whether plaintiffs ever asked permission to use the beach or to place docks or moor boats in the water, such that an easement by prescription to the shared beach or to place docks on their easements would have ripened. Moreover, it bears repeating that none of the photographs are dated, and a majority of the individuals pictured in the photographs are not identified—in other words, their usefulness as evidence is contingent on their weight and credibility.

Neither plaintiffs nor defendants have presented any evidence to prove their claims that would not require the court to weigh evidence or assess witness credibility, which is plainly disallowed at the summary disposition stage. See *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020) ("The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." (quotation marks and citation omitted)); *Morris v Allstate Ins Co*, 230 Mich App 361, 364; 584 NW2d 340 (1998) ("Critically, the court may not make factual findings or weigh witness credibility in deciding a motion for summary disposition"). This Court is likewise not permitted to make factual findings or weigh credibility. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004).

To put this differently, if the resolution of a case necessarily depends on the credibility of competing witness testimony, summary disposition is inappropriate, as reasonable minds could differ as to the veracity and credibility of each witness. *Skinner v Square D Co*, 445 Mich 153, 160-162; 516 NW2d 475 (1994). Matters of credibility and the weight to be given to particular kinds of evidence are for a jury to decide. *Id.* Here, even if we accepted plaintiffs' averments in their depositions and affidavits as true, and made all reasonable inferences in their favor as the nonmoving parties, *id.*, we could still draw opposing inferences about the nature and extent of plaintiffs' use of the beach and their placement of docks on their 10-foot easements based on defendants' testimony. Accordingly, where record evidence would permit reasonable minds to differ regarding whether plaintiffs have established the right to access the shared beach or place

docks and boats in the water via prescriptive easement, summary disposition was inappropriate. The trial court thus erred by granting summary disposition to plaintiffs under MCR 2.116(I)(2).

## 2. THE MICHIGAN LAND DIVISION ACT

Defendants next argue that by asserting the existence of a shared beach to which they have access rights, plaintiffs are unlawfully amending the Pine Grove Beach plat in violation of the Michigan Land Division Act, MCL 560.221 *et seq*. This issue was only raised below as an affirmative defense, and was never raised or addressed before the trial court in any substantive manner. On its face, the issue is waived, see *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008) (stating that "the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute."). We further question the viability of raising this as an affirmative defense, rather than as a counterclaim. A counterclaim, as a cause of action, is one that exists in favor of a defendant against the plaintiff and on which a defendant might have brought a separate action and recovered judgment. See 20 Am Jur 2d, Counterclaim, § 1, p 260-261. "A counterclaim does not seek to defeat the plaintiff's claim as a cause of action; rather it is an independent, affirmative claim for relief." 20 Am Jur 2d, Counterclaim, § 1, p 261. On the other hand, "[a]n affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff." *Stanke v State Farm Mut Automobile Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993). As raised in this case, arguments regarding the Michigan Land Division Act would be the proper subject of a counterclaim, rather than an affirmative defense, but defendants never pursued the issue as a counterclaim. For these reasons, we decline to address the merits of the issue.

## 3. BACKLOT-BY-BACKLOT ANALYSIS

Defendants also argue that the trial court erred by failing to conduct an individual, backlot-by-backlot analysis of each plaintiff's easement rights, prescriptive or otherwise. Defendants state that in *Astemborski v Manetta*, 341 Mich App 190, 200-202; 988 NW2d 857 (2022), this Court stated that trial courts are required to evaluate each backlot owner's property and easement rights in detail on the record. While this Court did provide extensive detail regarding the various property rights at issue in *Astemborski*, *Astemborski* does expressly stands for the proposition that the trial court *must* engage in such analysis on the record. Defendants cite no further caselaw to support this pronouncement, and thus we decline to further consider the issue. See *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 406; 927 NW2d 717 (2018) (stating that a litigant may not simply declare a position and leave it the courts to " 'discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " (citation omitted)).

## 4. *LITTLE II*

Defendants next argue that they were entitled to a mandatory evidentiary hearing regarding the *Little II* balancing test and that the trial court erred by declining to hold one. Setting aside the dearth of evidence indicating that defendants ever requested an evidentiary hearing, defendants do not support the contention that they were entitled to such a hearing with any applicable caselaw, and thus it has been abandoned, see *id*.

The parties also dispute whether the *Little II* balancing test applies to prescriptive easements; defendants argue that it does, plaintiffs argue the opposite. A review of the language of *Little II*, 498 Mich at 700, indicates that it singularly applies to the determination of the scope of an express easement. According to *Little II*, "[w]here the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Id*. It goes on to give directions to trial courts regarding the proper analysis of an easement that *is* ambiguous. *Id*. at 699-700. *Little II* says nothing about prescriptive easements. Thus, the Supreme Court's directives regarding easements in *Little II* would at most apply to a determination of the scope of the express easements set forth in the deeds to plaintiffs' properties.

## B. ADDITIONAL ISSUES ON DIRECT APPEAL

### 1. MOTION TO STRIKE

Defendants also argue that the trial court abused its discretion by declining to address their motion to strike plaintiffs' affidavits. We agree, but find that the error is moot in light of our decision to reverse the lower court's judgment in favor of plaintiffs.

A trial court's ruling on a motion to strike an affidavit is reviewed for an abuse of discretion. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022). "However, failure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012) (quotation marks and citations omitted). Questions of law, including those pertaining to the interpretation of statutes and court rules, are reviewed de novo. *Kalaj*, 295 Mich App at 425.

As discussed herein, the trial court erred by disposing of this case by granting summary disposition to plaintiffs under MCR 2.116(I)(2). Accordingly, the question of whether the court should have addressed the motion to strike, in relation to the motion for summary disposition, is moot. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (noting that an issue is moot where "a judgment cannot have any practical legal effect upon a then existing controversy." (quotation marks and citation omitted)).

However, even if this were not the case, remand to the trial court would only be required if the trial court's failure to rule on plaintiff's motion were "inconsistent with substantial justice." MCR 2.613(A). Defendants contend that several affidavits contain inadmissible hearsay, opinions, conclusion of fact, and statements that contradict their earlier deposition testimony. In support of this contention, defendants submitted a lengthy document to this Court, identical to that submitted to the trial court, explaining every instance where an affidavit purportedly conflicts with an affiant's deposition testimony, and every instance of alleged hearsay. However, aside from defining hearsay, defendants never explain *how* any of these individual statements are actually hearsay. Defendants further cite a number of cases, seemingly at random and out of context, regarding hearsay in affidavits. But rather than draw any cogent conclusions about why these cases matter, they essentially leave it to this Court to connect the dots by referring the panel to the underlying motion to strike and the list of claimed deficiencies in the affidavits, copied and pasted

into a separate document. In essence, defendants task this Court with the responsibility of parsing out whether the statements are in fact hearsay, and if so, what type of hearsay, as well as determining whether each and every claimed infraction in plaintiffs' affidavits actually lacks record support. It is not our responsibility to "unravel and elaborate" defendants' argument for them. *Henry Ford Health Sys*, 326 Mich App at 406. Beyond that, we are not persuaded that plaintiffs' deposition testimony actually conflicts with their affidavit testimony. However, we make no pronouncement one way or the other, as the matter was never addressed by the trial court. See *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004) ("Ordinarily, we do not address issues not raised below or on appeal, or issues that were not decided by the trial court."). Accordingly, even if the matter were not moot, defendants have not shown that their argument has merit, and any error was harmless.

## 2. MOTION FOR RECONSIDERATION

Defendants next argue that the trial court erred by denying their motion for reconsideration. We disagree, but note that the issue is moot.

We review "a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes, or when the court makes an error of law. *Micheli*, 340 Mich App at 367.

Defendants essentially state that the trial court's discretion to grant its motion for reconsideration was "unrestricted," and that if it wanted to, it could have granted the motion for reconsideration. Under MCR 2.119(F)(3),

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which *merely presents the same issues ruled on by the court*, either expressly or by reasonable implication, *will not be granted*. The moving party must demonstrate a *palpable error* by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [Emphasis added.]

Defendants point out that "[t]his Court has held that the palpable error provision in MCR 2.119(F)(3) is not mandatory and only provides guidance to a court about when it may be appropriate to consider a motion for rehearing or reconsideration." *People v Walters*, 266 Mich App 341, 350; 700 NW2d 424 (2005). While this may be so, it does not negate that a motion that "merely presents the same issues ruled on by the court . . . will not be granted." MCR 2.119(F)(3). Here, defendants argued that the trial court erred by failing to specifically address their motion to strike plaintiffs' affidavits, and that the motion should have been granted because plaintiffs' affidavits contain hearsay and other inadmissible content. Defendants are simply presenting the same issue regarding the substance of the motion to strike on reconsideration. Moreover, since we have concluded that the trial court erred in granting relief to plaintiffs and that remand is required, defendants' argument regarding the motion for reconsideration has been rendered moot. *See TM*, 501 Mich at 317. We decline to further consider it.

## 3.  COUNTERCOMPLAINT

Finally, defendants argue that the trial court committed a ministerial error requiring correction by failing to address their counterclaims and affirmative defenses.  We again disagree.

Defendants present no legal authority to support the argument that the trial court was required to address each and every counterclaim and affirmative defense raised by defendants.  The only citation listed is to an unpublished case, which they claim stands for the notion that closing a case without addressing a parties' counterclaims is a "ministerial error."  See *Tyson Foods, Inc v Dep't of Treasury*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2011 (Docket No. 295710).  Setting aside that this case has no precedential value under MCR 7.215(C)(1), *Tyson Foods* merely states that a trial court erred by including "final judgment" language in an order, and that doing so was a "ministerial error."  *Tyson Foods, Inc*, unpub op at 2.  This case is irrelevant to defendants' argument.  Beyond that, defendants appear to once again expect this Court to develop their arguments for them, and also to review the merits of each counterclaim and affirmative defense "as if on leave granted."  We decline to do so.  See *Henry Ford Health Sys*, 326 Mich App at 406.

## III.  CROSS-APPEAL

Plaintiffs argue on cross-appeal that their 10-foot express easements include the right to moor boats and place docks in the water.  We disagree.

As noted in Issue II(A), *supra*, we review de novo a trial court's decision on a motion for summary disposition.  *El-Khalil*, 504 Mich at 159.  In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion."  *Id*.  The motion "may only be granted when there is no genuine issue of material fact . . . upon which reasonable minds might differ."  *Id*.  Conversely, summary disposition under MCR 2.116(I)(2) is appropriate if the trial court "determines that the opposing party, rather than the moving party, is entitled to judgment."  *Hambley*, ___ Mich App at ___; slip op at 3.

Unlike the prescriptive easement issue, sufficient evidence has been presented by the parties to allow us to resolve this question.  It is not in dispute that plaintiffs' property deeds each grant them an express easement with access to Big Star Lake for swimming and boating purposes, with the exception of the Olsens' deed, which is mute on the subject of the easement's express purpose.  Specifically, the Bloomquists and VanderVeens have "an easement for the purpose of access to and from Big Star Lake for private swimming and boating purposes," whereas the Brunns have "an easement ten feet (10') in width  . . . for the purpose of access to and from Big Star Lake for private swimming and boating purposes," and the Olsens merely have "a perpetual easement over a strip of land 10 feet in width lying between Lake Shore Drive and Big Star Lake[.]"  The question is whether the easements are for ingress and egress only, or whether they allow for the placement of docks and boats.  In ruling on plaintiffs' motion for partial summary disposition, the trial court found that plaintiffs had no express "riparian rights such as sunbathing, lounging, picnicking, the erection or use of a dock, boat hoist, or other structure, or the seasonal mooring of a boat or watercraft."

-17-

The owner of property subject to an easement may rightfully use his or her land for any purpose that is not inconsistent with the rights of the easement holder. *Bayberry Group, Inc*, 334 Mich App at 399. "The language of the instrument that granted the easement determines the scope of the easement holder's rights." *Id*. at 399-400. The same rules applicable to the interpretation of contracts generally apply to the determination of the purpose and scope of an easement. *Id*. at 400. Thus, to ascertain the easement's scope, we must determine the intent of the parties at the time the easement was created. *Id*. This analysis begins with the easement's plain language. *Id*. If the language of the easement is clear, it must be enforced as written. *Id*. In general, the conveyance of an easement gives the grantee all rights necessary or incident to the proper enjoyment of the easement. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 41-42; 700 NW2d 364 (2005).

This Court addressed an express easement concerning the placement of a dock in *Dyball v Lennox*, 260 Mich App 698, 705-706; 680 NW2d 522 (2004), explaining:

> Erecting or maintaining a dock near the water's edge is a riparian or littoral right. A "riparian owner" is one whose land is bounded by a river and "riparian rights" are special rights to make use of water in a waterway adjoining the owner's property. There is no dispute that plaintiffs are riparian owners with riparian rights. And, there is no dispute that defendant's rights with regard to the lake are those rights granted in the easement. Reservation of a right of way for access does not give rise to riparian rights, but only a right of way. While full riparian rights and ownership may not be severed from riparian land and transferred to nonriparian backlot owners, Michigan law clearly allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian. [Quotation marks, citations, and brackets omitted.]

In *Thies*, 424 Mich at 288, this Court likewise summarized the applicable law as follows:

> Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. These include the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore. Nonriparian owners and members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. [Citation omitted.]

However, the *Thies* Court did note that "[p]laintiffs cannot prevent defendants from erecting a dock or permanently anchoring their boats if these activities are within the scope of the plat's dedication, and do not unreasonably interfere with plaintiff's use and enjoyment of their property." *Id*. (citation omitted).

Although each of the easements appears to give plaintiffs some degree of access to the lake, nothing in the express terms of the easements or the plat dedication indicates that the VanDusens, who originally owned the properties and included the easement in each deed, intended to grant plaintiffs full riparian rights, equal to the riparian rights granted to defendants as lakefront

cottage owners. For example, it bears consideration that the VanDusens did not grant any large easements to the backlot cottage owners. Judging by the slight amount of land granted to plaintiffs—two 10-foot easements, split between *four* backlot cottages—it is our opinion that the easements were not intended as places where backlot cottage owners would be spending much time, other than to go in and out of the water. If each backlot owner was granted the right to place a permanent dock in the water, for example, would there be room for more than a single dock on one of these easements? We posit that there would not.[1] Thus, as to the Bloomquist, VanderVeen, and Brunn deeds, which note that each owner has access to the lake for "swimming and boating purposes," and considering applicable caselaw, we conclude that the deeds allow for the use of the easements in an impermanent way; that is, to swim, carry small boats along the easement, put small boats in the lake, and temporarily moor small boats on the easement. It does not grant plaintiffs the right to place seasonal or permanent docks in the water, or to place large boats in the lake. Similarly, given that the Olsens' deed is entirely mute about its purpose, and simply provides a pathway between their property and Black Star Lake, we conclude that it also fails to support the argument that the Olsens have full riparian rights. Ultimately, none of the easements appear to provide plaintiffs the right to permanently place docks in the water or moor boats. We decline to read such a right into existence.

## IV. CONCLUSION

The trial court did not err by concluding that plaintiffs' express easements do not provide them with full riparian rights. Consequently, plaintiffs may not place permanent or seasonal docks on their easements. Rather, they may only use these easements to swim and to temporarily place small boats in the water. However, the trial court did err by concluding that plaintiffs have a right to access the shared beach and to place boats and docks in the water via prescriptive easement. Accordingly, defendants have properly established that the court erred by granting summary disposition to plaintiffs under MCR 2.116(I)(2). Whether and to what extent plaintiffs have established access to the lake or the beach via prescriptive easement is a matter for trial. In all other respects, defendants' appeal lacks merit.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

---

[1] To put this in perspective, Daniel VanderVeen testified in his deposition that he currently owns a 19-foot-long Crownline boat. While the VanderVeens may not have stored the boat parallel to the shore, the fact is that their boat is longer than the entire 10-foot express easement that they share with the Olsens. Placing more than one dock here, or storing more than one boat, appears plainly unfeasible, and suggests that the VanDusens likely did not intend for backlot property owners to be able to do so. At most, the easements appear to provide room for the temporary placement of small boats, such as canoes or kayaks, rather than larger watercraft, the placement of which would require the use of trailers or a boat launch.