NICHOLLS *v.* CHARLEVOIX CIRCUIT JUDGE.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — WHARVES — CONSTITUTIONAL LAW.

A city of the fourth class is not prohibited under the Constitution of 1908 (article 8, § 23, or article 10, § 14) from entering into a contract for the erection of a public wharf upon lands owned by it at the foot of a street which terminates in navigable water.[1]

Mandamus by Harry Nicholls to compel Frederick W. Mayne, circuit judge of Charlevoix county, to vacate an order denying an injunction. Submitted January 20, 1909. (Calendar No. 23,227½.) Writ denied February 2, 1909.

*Robert W. Kane,* for relator.

*Arthur L. Fitch,* for respondent.

MOORE, J. This is a proceeding by mandamus to com-

[1]As to right of city to erect wharf, see note to *Madison* v. *Mayers* (Wis.), 40 L. R. A. 645.

pel the respondent to vacate an order denying an injunction to restrain the common council of the city of Charlevoix from entering into a contract for the construction of a public wharf upon lands owned by it at the foot of a street which terminates in the waters of Pine Lake, which waters are navigable waters. It is conceded that all the proceedings are regular.

Counsel for the relator states in his brief that the sole question is:

" Has the legislature the constitutional power to authorize cities of the fourth class to erect and maintain public wharves ?"

It is insisted the proposed improvement is a work of internal improvement within the inhibition of article 14, § 9, of the old Constitution of 1850, and article 8, § 23, and article 10, § 14, of the new Constitution of 1908. Counsel for relator in his oral argument repeated what is stated in his brief that he has but one authority, to wit, *Attorney General, ex rel. Brotherton,* v. *Detroit Common Council,* 148 Mich. 71, which sustains his contention. An examination of that case discloses that it did not relate to the erection of a public wharf. It is clearly distinguishable from the one at bar. As early as 1815 the city of Detroit was authorized to erect, repair, and regulate public wharves. Laws 1820, p. 175, § 14. It has exercised that right from then until now. It is doubtful if there is a city or village in the State having streets terminating upon navigable waters which is not exercising a like right. It is very significant that during all these years the right has not been successfully challenged. In *Backus* v. *City of Detroit,* 49 Mich. 110, the question was raised. Justice COOLEY, speaking for the court, said in part:

" The charter of the city confers power upon the common council to erect, repair, and regulate public wharves and docks at the ends of streets, or on the property of the city, and, acting in the assumed exercise of this authority, the city has entered into a contract with parties named in the bill for the construction of a wharf in extension of said

street to the outer line of complainant's wharves aforesaid.

"This is an injunction bill to restrain the construction by the city of the wharf for whose construction a contract has been made. The superior court granted the relief prayed. It does not appear what use the city proposes to make of the wharf when constructed, and the complainant contests the right to construct it for any purpose whatever. His claim is that the slip is entirely upon his own land, and that the dedication terminated at the shore. If therefore the city has no authority to construct the wharf for any purpose, the decree from which the city has appealed must stand; but if the city may construct it for some purposes, but not for others, we should assume that the purpose intended was lawful, and sustain the appeal.

"This is an important question, for it is one that arises in many places, and considerable interests are likely to depend upon it whenever the land affected by the supposed dedication is valuable for commercial purposes. Each party claims that the position contended for is eminently reasonable and just, and asks judgment on that basis; but each party claims also that its contention is sustained by authority.

"The river Detroit is a navigable river, in the American sense of that term. The site of the proposed wharf is covered by navigable water. It is not claimed that the wharf, if constructed, will in any degree obstruct or embarrass navigation, and, if a private individual were owner of the bank, his right to construct the wharf would be conceded."

The opinion concludes:

"But it is not to be inferred, from what is above said, that in our opinion the city has a right to appropriate the end of the street to private uses, or to any uses inconsistent with the dedication. It would be premature for us to undertake to indicate precisely what the city may and what it may not do, since the question is not now before us. It is enough for us to say that the city derives its authority from the dedication of the public way, and that the construction of a wharf which shall give the means of access from the highway by land to the highway by water is not inconsistent with the gift."

It is not likely the learned author of Constitutional Limitations would have overlooked the constitutional in-

hibition, if one existed. In *Kemp* v. *Stradley*, 134 Mich. 676, Chief Justice HOOKER, speaking for the court, said:

"That a city may build a dock at the end of a street has been held in many cases. *Barney* v. *Mayor and City of Baltimore*, 1 Hughes (U. S.), 118; Angell on Highways, § 301; *City of Newport* v. *Taylor's Ex'rs*, 16 B. Mon. (Ky.) 804; *Mayor, etc., of New Orleans* v. *United States*, 10 Pet. (U. S.) 717; *McMurray* v. *Mayor, etc., of Baltimore*, 54 Md. 103; Gould on Waters, § 106; 2 Smith on Municipal Corporations, § 1314; Dillon on Municipal Corporations (4th Ed.), §§ 110, 634 (note); *Newark Lime & Cement Manfg. Co.* v. *Mayor, etc., of Newark*, 15 N. J. Eq. 64."

In conclusion he said:

"We think it unnecessary to go outside of Michigan for authority sustaining the right of the defendant city to build and lease wharfing privileges."

In 1 Farnham on Waters and Water Rights, p. 565, it is said:

"The construction, maintenance, and control of wharves within its limits is so closely connected with the prosperity of a municipal corporation, and is so nearly allied to the power which it exercises over its streets, that no question has ever been raised as to the right of the legislature to authorize a municipality to own and maintain them. The property for the wharf may be secured by grant, purchase, or by condemnation proceedings; and the funds for its construction and maintenance may be obtained by taxation"—citing many cases.

We think the city of Charlevoix is authorized to do what it is attempting to do.

The writ of mandamus is denied, with costs.

BLAIR, C. J., and GRANT, MONTGOMERY, and MCALVAY, JJ., concurred.