*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW BARNARD and NICOLE BARNARD,

        Plaintiffs-Appellees,

v

J.G. PRAY'S SUBDIVISION HOMEOWNERS
ASSOCIATION,

        Defendant-Appellant,

and

KAREN HERR, JAMES HERR, HUGH JAMES
DYE, TARA DYE, SHAUNA DAVIS, JAMES A.
ARQUETTE, AMANDA HAYNES, STEVEN
HAYNES, YVONNE HAYNES, ELIZABETH
ANNE WYLAND, ROBERT J. COLOSKE, and
TINA M. COLOSKE,

        Defendants.

FOR PUBLICATION
April 01, 2026
2:23 PM

No. 370541
Washtenaw Circuit Court
LC No. 22-000910-CH

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

YATES, J.

Lakefront property typically sells for a king's ransom because it provides spectacular views and ready access to the water. But if the land of littoral property owners is subject to an easement,[1] they must share lake access with the easement holders, and that relationship often leads to conflict. Plaintiffs-appellees, Matthew Barnard and Nicole Barnard, own one of the two servient parcels to an easement used by J.G. Pray's Subdivision for access to Whitmore Lake. That easement and the

---

[1] "[L]and which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." *Thies v Howland*, 424 Mich 282, 288 n 2; 380 NW2d 463 (1985).

subdivision were both established in 1920. During a legal dispute decades ago over that easement, defendant-appellant, J.G. Pray's Subdivision Homeowners Association (the Association), was formed to collect dues from subdivision members and mow the lawn on the easement. Much more recently, after numerous contentious exchanges over increased use of the easement, plaintiffs filed this suit against some subdivision owners and the Association. After a bench trial, the Association was found liable for nuisance and assessed $5,000 in damages. The trial court also issued an order further restricting the subdivision owners' use of the easement and mandating that the Association establish bylaws governing use of the easement. The Association appeals of right, contending that the trial court erred in arriving at its verdict and entering its judgments. We vacate the judgments, reverse the verdict against the Association, and remand for further proceedings.

## I. FACTUAL BACKGROUND

In 1920, J.G. Pray's Subdivision was platted on Whitmore Lake,[2] and a warranty deed was recorded establishing an easement for subdivision owners' access to the lake and "use of the dock in front of" the servient properties.[3] Consequently, that easement burdens two servient properties. A subsequent owner of one servient property started interfering with the subdivision owners' use of that easement in 1987, and the location of the easement became disputed, resulting in a lawsuit filed by the subdivision owners in 1990. During that legal action, the trial court suggested that the subdivision owners should establish an association to collect dues and maintain the grounds of the easement, and the owners established the Association in 1991.[4] The trial court issued its opinion and judgment in 1992 establishing the location of the easement, and the competing parties all agree that the easement runs across the two servient parcels of property to the water's edge—as depicted in the photograph below—between the boat lift and the two signs on the left and the split-rail fence on the right:

---

[2] Jay G. Pray was a legendary Washtenaw County clerk and probate judge.

[3] Land burdened by an easement is typically described as servient property. *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020).

[4] The Association relies on volunteerism among its members, has several leaders, i.e., a president, a treasurer, a secretary, and two trustees, and collects $25 per owner annually to maintain the lawn on the easement. But the Association has no foundational documents, bylaws, or other governing records beyond past practice. As of 2023, the Association consisted of 32 houses on 50 lots.



The trial court also determined that the subdivision owners have had a continuous access easement to Whitmore Lake for "mooring boats to the dock that was situated in front of the easement, that it was used for swimming, that it was used for fishing[,] and that such use though not of such frequency to create congestion and crowding, was, nevertheless, regularly and frequently made."

While one servient property owner appealed the matter to this Court, on July 31, 1992, the trial court issued a supplemental order that has been repeatedly cited and disputed in the case now before us. The trial court issued that supplemental order because "[i]t is apparent to the Court that the parties require direction as to the use of the easement during the appeal of this case." Providing that direction, the supplemental order stated in part:

> IT IS FURTHER ORDERED that the easement shall not be used as a park. Specifically, the uses are, limited as follows:
>
> A. Plaintiffs may use the easement for ingress and egress to the lake frontage;
>
> B. Plaintiffs may install a dock in the middle of the shoreline of the easement. The dock shall not exceed 30 feet in length.
>
> C. During the off-season months, the plaintiffs may store the dock on the easement.
>
> D. Plaintiffs may not store boats upon the easement.

E. Plaintiffs or residents of the Pray Subdivision may beach boats on the easement for up to one day. In the events residents of the Pray Subdivision entertain guests with boats, such guests may beach boats on the easement for up to one day.

F. Plaintiffs may not use the easement to either launch boats from boat trailers or land boats from boat trailers and Plaintiffs may not drive automobiles or trucks upon the easement.

G. Plaintiffs shall maintain the easement and any duly authorized breakwater in a manner consistent with the use of the easement.

H. Plaintiffs may not construct a fence upon the easement.

I. Plaintiffs shall build no bonfires upon the easement.

J. Plaintiffs shall not use the easement for the purpose of picnicking.

K. Plaintiffs shall not attempt to restrict the Defendant's use of the property so long as Defendant's use does not interfere with Plaintiffs' use of the property.

L. Mrs. Fairbanks is directed to move her dock to the extent necessary to avoid interference with the subdivision dock.

M. Mr. Sheridan shall, by Spring 1993, move the dock presently located near the west easement line. He shall move the dock at least 10 feet to the west.

IT IS FURTHER ORDERED that this Order shall automatically expire upon the date that the Court of Appeals issues a ruling in this case.

On February 27, 1995, this Court issued an opinion affirming the trial court and observing that, in light of the representations made during oral argument, "modification of the trial court's judgment is not necessary regarding the permissible uses of the easement." *Dixon v Sheridan*, unpublished per curiam opinion of the Court of Appeals, issued February 27, 1995 (Docket No. 151728).

Plaintiffs purchased that very same parcel of servient property in 2009, and they were made aware of the easement. They attempted to find out the rules governing the easement by consulting subdivision owners, but they were unsuccessful. Plaintiffs acknowledged that, on the day that they purchased the property in 2009, the subdivision's dock extended 50 feet into Whitmore Lake from the water's edge at the easement. And in 2011, plaintiffs obtained a copy of the 1992 supplemental order and concluded that it established how the easement could be used by the subdivision owners. They presumed that easements were used strictly for the purposes of ingress and egress.[5] Plaintiffs

---

[5] At the trial, plaintiffs acknowledged that they had known that the 1992 supplemental order had expired by its own language in 1995. That supplemental order directed the subdivision owners to maintain the easement, including mowing the lawn, which the Association thereafter did. Without

experienced a "crescendo" in the use of the easement that began in 2017 and culminated in 2021, when they found inflatable islands moored off the easement dock, stacked kayaks, numerous boats moored to the dock, and golf carts parked on the easement. Further, they saw people congregating and playing drinking games on the easement, which resulted in trespassing onto the non-easement portion of plaintiffs' property. Plaintiffs explained that that interfered with their enjoyment of the property, and that overcrowding of the easement caused trespassing onto their property and dock.

Plaintiffs filed this lawsuit in July 2022, advancing claims of trespass and nuisance against some subdivision owners and the Association as a whole. They requested enforcement of the 1992 supplemental order, as well as declaratory and injunctive relief, demanding to have the dock length restricted to 30 feet and to bar the mooring of boats on the dock. Before the bench trial occurred, the parties reached a partial settlement, resulting in the entry of a consent order on those issues. A bench trial took place in July 2023. Testimony at that trial established that the Association had no rules governing use of the easement. Instead, volunteerism was encouraged, and if a subdivision owner had a boat, that boat owner was required to volunteer to put in the dock, take it out, paint or repair it as necessary, and use the dock on a first-come, first-served basis. However, if somebody wanted to moor a boat to the dock but failed to volunteer, nothing would happen. One subdivision owner testified that, during his 74-year ownership, the dock had varied from 20 to 70 feet in length.

Testimony from the trial revealed that numerous contentious incidents occurred involving plaintiffs and the subdivision owners and their guests regarding the use of the easement. Plaintiffs explained that they were concerned about the level of activity on the easement, especially because not all 50 lots in the subdivision had structures on them yet. They further asserted that, although a fence dividing the easement from the non-easement portion of their property would resolve many issues, they were nervous about how a fence would affect their ability to sell their property. They also conceded that they were aware the 1992 supplemental order had expired by its own terms, but they nonetheless sought to enforce that supplemental order.

No evidence, other than a single photograph of one named defendant, established that any named defendant had committed a trespass on the portion of plaintiffs' property not subject to the easement.[6] During closing arguments, the trial court interjected, stating:

> I have no interest in writing by-laws for the homeowner's association. I guess I would ask whether it will be helpful to the association for the Court to write some rules with respect to the priority or determination of who can use a dock . . . and how that's going to be determined. . . . The only reason that I am willing to do it is

that order, the subdivision owners did not have to care for the lawn, and before this suit was filed, plaintiff Matthew Barnard began mowing plaintiffs' property that was burdened by the easement.

[6] The trial court initially granted a directed verdict in favor of all but one defendant (including the Association) on the trespass claim, but later asserted that its ruling did not apply to the Association. The trial court requested supplemental briefs from the parties as to whether the Association could be held liable for trespass, but the court ultimately ruled that, because plaintiffs were not harmed by any trespass, no damages would be awarded. The trial court did not otherwise decide whether the Association could be held liable for trespass, or whether the Association committed a trespass.

because if the HOA determines to do it, they need to get approval of a certain percentage of the members. . . . And . . . it might easier for the Court to do that than for the association to try to heard [sic] cats. . . . I am willing to force rules onto the association so that they don't have to go around to find everybody to consent to the establishment of rules for the association.

On November 9, 2023, the trial court ruled from the bench, not only rendering its verdict, but also stating its belief that the 1992 supplemental order bound the parties because "I don't think anyone disputes" that.[7] The trial court observed that "[t]he evidence demonstrated that until fairly recently the dock was 30 feet long or didn't exceed 30 feet,"[8] and, because "defendants have not demonstrated a right to a dock that exceeds 30 feet," the court ruled that the dock must not exceed 30 feet in length. The court decided that the Association had maintained a nuisance and assessed damages of $5,000, but offered no explanation for that amount. On March 29, 2024, the trial court issued two judgments, one non-recordable and the other recordable, which stated in pertinent part:

1. Any guests of Subdivision owners who use the Easement must be accompanied by one of the lot owners in the Subdivision.

2. The HOA shall amend its bylaws to include the terms of this Final Judgment and record those amended bylaws.

3. This Final Recordable Judgment shall be recorded with the Washtenaw County Register of Deeds.

4. Any dock placed on the Easement by the Defendants shall not exceed 30 feet in length and shall not include side docks or t-sections or lifts.

5. Boats may be moored to the dock seasonally (long term).

6. Subdivision owners or their guests may not use the dock or boats moored to the dock to party, picnic or congregate.

7. Subdivision owners or their guests may only swim and wade at the Easement and around the dock only on the east side of the dock, and only in the water.

8. Subdivision owners or their guests may only fish / cast their line to fish from the dock or in the water on the east side of the dock.

The Association now appeals of right.

---

[7] In fact, all the parties ultimately agreed or conceded that the 1992 supplemental order had expired, and earlier in the action, the trial court had arrived at the same conclusion and dismissed plaintiffs' claim for enforcement.

[8] That observation was inconsistent with the testimony presented at trial.

## II. LEGAL ANALYSIS

On appeal, the Association argues that the trial court erred when it determined that the dock historically did not exceed 30 feet, and the Association claims that the easement includes no such restriction on the length of the dock. Also, the Association faults the trial court for relying on the expired 1992 supplemental order as binding authority. Beyond that, the Association contends that the trial court erred when it restricted use of the dock to its east side when the easement contains no such restriction. Finally, the Association claims that the trial court erred by entering a judgment against it on the nuisance claim because insufficient evidence was presented to support a finding of liability on such a claim against the Association. "We review a trial court's findings of fact at a bench trial for clear error and review its conclusions of law de novo." *Avery v State*, 345 Mich App 705, 715; 9 NW3d 115 (2023). "The scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal." *Wiggins v City of Burton*, 291 Mich App 532, 550; 805 NW2d 517 (2011). "We also review de novo a trial court's rulings on equitable issues, including the grant of injunctive relief." *Little v Kin*, 249 Mich App 502, 507; 644 NW2d 375 (2002) (*Little I*).

"An easement is the right to use the land of another for a specified purpose, and an easement may be created by express grant, by reservation or exception, or by covenant or agreement . . . ." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 399; 964 NW2d 846 (2020) (quotation marks and citations omitted). This Court has determined that "[t]he language of an express easement is interpreted according to rules similar to those used for the interpretation of contracts." *Wiggins*, 291 Mich App at 551. Additionally, because "an easement may be created by a subdivision plat" and "[t]he designation of an easement on a properly recorded plat ha[s] all the force and effect of an express grant" of an easement, the "language used in a plat is subject to similar rules of interpretation" as an express easement. *Id*. at 552 (quotation marks and citations omitted, brackets in original).

Littoral property owners enjoy "certain exclusive rights," including "the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore," *Thies v Howland*, 424 Mich 282, 288; 380 NW2d 463 (1985) (citations omitted), and those "rights normally afforded exclusively to [littoral] landowners may be conferred by easement" upon nonlittoral owners. *Little I*, 249 Mich App at 511. An "easement is a right to use the land burdened by the easement rather than a right to occupy and use the land as an owner[,]" so an "owner of an easement cannot displace the possessor or the owner of the land, but he or she has a qualified right to possession so far as may be necessary for its enjoyment." *Terlecki v Stewart*, 278 Mich App 644, 659-660; 754 NW2d 899 (2008) (quotation marks and citations omitted). The land burdened by an easement is called "the servient estate," and the land benefited by an easement is called "the dominant estate." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020). When the language of an easement "is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted," but when "the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Little v Kin*, 468 Mich 699, 700; 644 NW2d 749 (2003) (*Little II*). Thus, "in ascertaining the scope and extent of an easement, it is necessary to determine the true intent of the parties at the time the easement was created." *Wiggins*, 291 Mich App at 551. "The necessity of an easement holder's conduct" when using that easement "can be informed by the purpose and scope of the easement in addition to the

easement holder's accustomed use of the easement." *Smith*, 331 Mich App at 215-216. With these legal principles in mind, we must turn to the facts in this case.

The 1920 easement at issue stated that, with respect to "Lot number two of Jay G. Pray's Whitmore Lake Subdivision[,]" the "persons purchasing lots on the above mentioned subdivision are to have the privilege together each the same rights as the others of the twenty five foot of lake front lying directly in front of Walnut Drive of this subdivision and running from the road running on the south side Whitmore Lake to the waters edge, also the use of the dock in front of said land." That easement clearly and unambiguously established the right of the subdivision owners to use the land that constituted the 25-foot-wide easement on the servient properties, as well as the dock off the shore of the property burdened by the easement. But conveyance of that easement did not articulate the manner and extent to which the land subject to the easement could be used. Turning to the easement holders' "accustomed use of the easement," *Smith*, 331 Mich App at 216, the trial court found in its March 1992 opinion that subdivision owners used the easement for "purposes of mooring boats to the dock that was situated in front of the easement, that it was used for swimming, that it was used for fishing[,] and that such use though not of such frequency to create congestion and crowding, was, nevertheless, regularly and frequently made." In addition, the trial court found that "[i]n the winter months snowmobiles utilized the access."

The Association contends that the trial court erred in three respects in resolving the dispute about use of the easement. First, the Association asserts that the trial court erred by restricting the length of the dock to 30 feet. Second, the Association claims that the trial court erred by confining the use of the dock to its east side because the easement contains no such restriction. Third, the Association argues that the trial court erred by finding it liable on the nuisance claim when the trial record did not contain sufficient evidence to support a finding of liability on that claim against the Association. We will address those three arguments in turn.

## 1. THE LENGTH OF THE DOCK

The parties agreed in the trial court that the easement holders had the right to install a dock from the water's edge into Whitmore Lake, but they disagreed about the permissible length of that dock. At plaintiffs' behest, the trial court ordered that the dock should be restricted to a maximum length of 30 feet. No evidence other than the expired July 31, 1992 supplemental order—and the subdivision owners' compliance with that order—demonstrated that the dock historically had been restricted to 30 feet. Instead, the testimony revealed that, other than a few years in the 1950s when the lake level was too low to install a dock, the dock's length ranged from 20 to 70 feet, with the most recent length being 50 feet. Indeed, plaintiff Matthew Barnard expressly acknowledged that when plaintiffs purchased the servient property in 2009, "the dock was 50-foot long . . . ." Thus, we conclude that the trial court not only erred as a matter of law by ruling that the July 31, 1992 supplemental order controlled because it had expired by its own terms, but also clearly erred by determining, as a matter of fact, that "until fairly recently the dock was 30 feet long." Therefore, the trial court erred by restricting the length of the dock to 30 feet because neither the language of the easement itself nor past practice supports that restriction. See *Little II*, 468 Mich at 700 ("If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement."); *Smith*, 331 Mich App at 215-216 ("The necessity of an easement holder's conduct can be informed by the purpose and scope of the easement in addition to the easement holder's accustomed use of the easement."). Accordingly, we vacate the

trial court's imposition of the 30-foot restriction on the length of the dock and remand that matter for further consideration.

## 2. THE USE OF THE DOCK

Plaintiffs asked the trial court to completely prohibit all the subdivision owners from using the waters near the easement for swimming, loitering, wading, fishing, and fishing from the dock. Although the trial court did not grant plaintiffs such extensive relief, it did order that "[s]ubdivision owners or their guests may only swim and wade at the Easement and around the dock only on the east side of the dock, and only in the water," and they "may only fish/cast their line to fish from the dock or in the water on the east side of the dock" in order to provide "a buffer to the Barnards." Evidence established that the subdivision owners historically had used the easement, the dock, and moored boats for fishing, swimming, wading, and congregating. With the exception of the expired July 31, 1992 supplemental order, no evidence suggested that restrictions had been placed on those activities. Hence, the trial court's restrictions conflict with "the easement holder[s'] accustomed use of the easement." *Smith*, 331 Mich App at 216. Further, whenever an easement affords littoral rights to a non-littoral dominant property, such a provision includes "an unrestricted right of access to the use of the waters" for "the purpose of swimming, fishing, bathing, wading[,] and boating." *Dyball v Lennox*, 260 Mich App 698, 707; 680 NW2d 522 (2004) (quotation marks and citation omitted). Thus, the trial court erred by restricting the easement rights of the subdivision owners.

Beyond that, the trial court's directive that "[s]ubdivision owners or their guests may only swim and wade at the Easement and around the dock only on the east side of the dock, and only in the water," and "may only fish/cast their line to fish from the dock or in the water on the east side of the dock" in order to provide "a buffer to the Barnards" reveals a fundamental procedural flaw in this action. Specifically, without hearing from the servient property owner to the east, the trial court entered an order shifting the subdivision owners' activities on the easement closer to the land of that non-party servient property owner without allowing any opportunity for that property owner to be heard. In the 1990 case, the trial court added the other servient property owner to the case to ensure that that property owner's interests were presented and considered, but no such protection of those interests was furnished in the instant case. Therefore, we vacate the trial court's restriction of activities to the east side of the dock, and we encourage the trial court and the litigating parties on remand to provide a process for the other servient property owner to be heard.

## 3. THE NUISANCE CLAIM

The Association argues that it cannot be held liable for nuisance because the trial court did not make findings of fact as to the elements of nuisance, no evidence was presented that established that the Association was aware of the alleged nuisance, and the Association itself has no rights to, or control over, the easement. As this Court has previously explained in addressing the distinction between claims of trespass and nuisance, "it has become difficult to differentiate between trespass and nuisance because the line between trespass and nuisance has become wavering and uncertain," but "this Court has recognized a desire to preserve the separate identities of trespass and nuisance." *Wiggins*, 291 Mich App at 555 (quotation marks and citations omitted). "[R]ecovery for trespass to land is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession," but "[o]nce such an intrusion is proved, the tort has been established, and the plaintiff is presumptively entitled

to at least nominal damages." *Id*. (quotation marks and citations omitted, alterations incorporated). "In contrast, where the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot, or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion, and the vehicle through which a plaintiff normally should seek a remedy is the doctrine of nuisance." *Id*. at 555-556 (quotation marks and citations omitted, alteration incorporated).

In order to "prevail in nuisance, a possessor of land must prove significant harm resulting from the defendant's *unreasonable* interference with the use or enjoyment of the property." *Id*. at 556 (quotations marks and citation omitted, emphasis in original). "There are countless ways to interfere with the use and enjoyment of land including interference with the physical condition of the land itself, disturbance in the comfort or conveniences of the occupant including his peace of mind, and threat of future injury that is a present menace and interference with enjoyment." *Adkins v Thomas Solvent Co*, 440 Mich 293, 303; 487 NW2d 715 (1992). "The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question." *Id*. A claim of private nuisance for nontrespassory invasion of another's interest in private enjoyment of their land is established if "(a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (*i*) intentional and unreasonable, or (*ii*) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct." *Terlecki*, 278 Mich App at 654 (quotation marks and citation omitted).

Here, the trial court made no findings of fact concerning plaintiffs' nuisance claim, and its judgments were therefore entered in error. Moreover, no evidence indicated that the Association's conduct was "the legal cause of the invasion" that disrupted plaintiffs' enjoyment of their property. *Id*. To be sure, plaintiffs offered evidence to support their nuisance claim, such as this photograph:



But no evidence established that the conduct depicted in the photograph could be attributed to the Association itself, as opposed to individual subdivision owners, as a matter of fact or as a matter of law. Thus, the trial court's judgments concerning the claim of nuisance against the Association must be vacated, and its verdict on the nuisance claim against the Association must be reversed.

Judgments vacated, verdict against the Association reversed, and case remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Daniel S. Korobkin
/s/ Kathleen A. Feeney